## LAWSON v. THE STATE OF INDIANA.

[No. 21,122. Filed May 26, 1908. Rehearing denied December 16, 1908.]

1. EVIDENCE.—*Insanity.*—*How Shown.*—*Non-Expert Witnesses.*— It is not erroneous to exclude a question asking for a non-expert witness's opinion of a person's sanity, without the witness's first stating the facts upon which such opinion is based. p. 434.

2. SAME.—*Improper Relations of Wife.*—*Homicide.*—*Motive.*—*Instructions.*—In a prosecution of a wife for the murder of her husband, self-defense being the plea, evidence of the wife's improper relations with other men is admissible as tending to show a motive, but the accused has the right to have the consideration of such evidence limited to such purpose. p. 437.

3. TRIAL.—*Instructions.*—*Applicability to Evidence.*—*Duplication.* —It is not erroneous to refuse tendered instructions which are inapplicable to the evidence, or which are substantially the same as those already given. p. 438.

4. SAME.—*Instructions.*—*Self-Defense.*—*Homicide.*—An instruction that if the accused was in a place where she had a right to be, and "without fault," she had a right to resist force by force, is not erroneous on the ground that it places upon the accused the burden of proving that she was "without fault." p. 439.

5. SAME.—*Burden of Proof.*—*Self-Defense.*—*Defendant's Fault.*— The burden of proving beyond a reasonable doubt, in a homicide case, that the accused was the aggressor in the first instance, the plea being self-defense, is upon the State. p. 440.

6. SAME.—*Instructions.*—*Invited Error.*—An accused cannot be heard to complain of an instruction stating that where defendant was in a place where she had a right to be, and "without fault," she had a right to repel force by force, where she asked that instructions containing the phrase "being without fault," be given, and which were given. p. 440.

7. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 440.

From Tippecanoe Circuit Court; *Richard P. DeHart,* Judge.

Prosecution by the State of Indiana against Alice Lawson. From a judgment of conviction, defendant appeals. *Affirmed.*

*John F. McHugh* and *Will R. Wood,* for appellant.

*James Bingham,* Attorney-General, *Daniel P. Flanagan,* Prosecuting Attorney, *George P. Haywood, Charles A. Burnett, A. G. Cavins, E. M. White* and *H. M. Dowling,* for the State.

JORDAN, J.—Appellant was charged by indictment with having, on September 21, 1906, at the county of Tippecanoe, and State of Indiana, feloniously, purposely and with premeditated malice, killed and murdered one Charles A. Lawson, by then and there shooting him with a deadly weapon called a revolver. The case was tried by a jury, and a verdict returned finding her guilty of murder in the second degree, and .fixing her punishment at imprisonment for life in The Indiana Women's Prison. Over motions in arrest of judgment and for a new trial, the court rendered judgment on the verdict. From this judgment she appeals and assigns that the court erred in overruling her motion for a new trial.

The evidence in the case shows that the deceased, Charles A. Lawson, was the husband of appellant. These parties had been married fifteen years. At the time of the marriage the deceased was engaged as a bartender in a saloon, but subsequently he purchased a saloon in the city of LaFayette, and then engaged in retailing intoxicating liquors, in which business he continued, barring some short intervals, to the day of his death. The crime was committed in his own saloon in the city of LaFayette, Tippecanoe county, Indiana, on September 21, 1906. A few years after marrying appellant he became addicted to the excessive use of intoxicating liquors, was frequently drunk, and when in this condition he was quarrelsome, and on several occasions, when under the influence of liquor, he beat appellant and knocked her down.

She at times was accustomed to "tend the bar" at his saloon, and she also became addicted to the free use of intoxicating liquors. The relations existing between her and her husband at and for some time prior to the murder were not amicable. The following may be said to be an epitome of her evidence as detailed and given by her upon the trial:

On the day of the murder she went to her husband's saloon and delivered some laundry. He was there at the time, but no words appear to have been exchanged between them. From the saloon she went to see a dressmaker, then returned to the saloon, and drank some liquor therein. Her husband was not present at the time. She went out into the city of LaFayette, called at several drygoods stores, and finally returned to the saloon about 5 o'clock p. m. Shortly after arriving at the saloon at that time her husband came in. He spoke to her, and asked what business she had there. Some conversation took place between them, and he told her that he was sick and tired of her, and it pained him to look at her; that she was an annoyance to him, and he requested that she leave. Some further conversation took place between them relative to some money he had. He said he had sufficient money to leave the town, etc. The deceased then went to his safe in the saloon and put some money he had in the safe. He then, as appellant stated, went behind the bar for the purpose of getting a drink of liquor, and she called to her little girl, who was with her, to come on and they would go home. She started to leave the saloon, and her husband hurled a large, heavy beer glass at her head. The glass missed her and struck a picture frame hanging upon the wall, breaking the glass over the picture. Deceased then started towards her and threw another beer glass at her, which also missed her, but struck the wall and was broken. She then ran to her hand satchel, which she had left in the saloon. In this satchel was a revolver. The deceased then proceeded towards her, and she stated that, knowing his dis-

position and his prior conduct, and fearing injury either to her body or to her life, she drew the revolver from the satchel, and, as he approached her, she fired several shots. He pursued her around the bar, she backing away from him all the time. She finally slipped, and at this time she discovered that he was within a few feet of her with an uplifted glass ready to strike her, and she again fired at him. She fired some four or five shots, some of which proved fatal. At the trial she attempted to excuse her act in killing her husband on the ground of self-defense, stating that she believed she was in great danger of bodily harm or of losing her life, and that she acted purely in self-defense. The evidence which she gave upon the trial was materially contradicted by evidence introduced on the part of the State.

John S. Cantrell testified at the trial on behalf of the State. His evidence in part contradicted that given by appellant in regard to what occurred at the saloon between her and her husband at the time the latter was shot. This witness testified that on the day of the murder he was in front of the saloon in question and heard noises and voices therein, and went into the saloon to see what the difficulty was. When he entered the saloon the deceased started towards the telephone and said: "I'll call an officer." Appellant, in response to this, said that she dared him to call an officer, and that he would not live to call one. At that time she had a revolver in her hand, and was pointing it towards her husband, who was then about two feet from her. The witness testified that the deceased did not do anything so far as he saw. Witness then walked out of the saloon. No objection was made by appellant, at the time Cantrell testified, in respect to his incompetency on the ground that he was a person of unsound mind. Appellant, however, in her defense, introduced one Slayback as a witness, by

1. whom she sought to prove that Cantrell was, at and prior to the time he gave his testimony, a person of

feeble and unsound mind. This evidence was offered for
the purpose, as stated, of affecting the credibility of Cant-
rell. The record discloses that Slayback, upon being intro-
duced as a witness by appellant, gave his name, his resi-
dence and business, and place where he conducted his busi-
ness. He testified that previous to his locating in LaFay-
ette he had resided at Dayton, Indiana, for about fourteen
years; that he was acquainted with John F. Cantrell, the
witness in question, and had known him for twelve years;
that during that time Cantrell had lived within one and one-
half squares of the witness's residence, and he saw him
every day; that since moving to LaFayette he had seen
him frequently. Following these statements made by the
witness, counsel for appellant propounded to him the fol-
lowing question: "State, Mr. Slayback, whether or not
Cantrell is a man of sound or feeble mind, and was on Sep-
tember 21, 1906." To this question the State objected.
Thereupon, the record recites that the defendant offered to
prove in answer to this question, and the witness would
have testified, if permitted, that the witness John F. Cantrell
is a person of feeble and unsound mind, and that he was a
person of feeble and unsound mind on September 21, 1906;
and this offer was made as going to the credibility of the
witness. Thereupon the court sustained the objection of the
State, to which the defendant at the time excepted. Ap-
pellant complains and urges as error this ruling of the
court in refusing to permit the witness to answer the ques-
tion propounded. Conceding, without deciding, that appel-
lant had the right to prove that the witness Cantrell was
a person of feeble or unsound mind at the time he testified,
for the purpose of affecting his credibility, still the question
which her counsel propounded to the witness Slayback, to
which the State objected, was not proper. He was a non-
expert witness on the question of insanity, and it will be
noted that the testimony given by him in regard to what
he knew about Cantrell was somewhat meager. He did not

testify to any conversation which he had with Cantrell, nor did he state anything in respect to any peculiarity or mental disposition which he had observed in respect to this witness. It is not shown that in propounding this question counsel for appellant sought to obtain the opinion of the witness in respect to the mental condition of Cantrell, as the same was founded upon the facts and circumstances which the witness had given to the jury. The question as asked invited the witness to give a mere naked opinion. Had the witness been permitted to answer the question as propounded, there was nothing included therein or coupled therewith to disclose to the jury that he was basing the opinion upon any of the facts which he had previously given in respect to his acquaintance with Cantrell. In fact, counsel for appellant state that they offered to prove by the witness, in his answer to this question, that John F. Cantrell was a person of feeble and unsound mind, and was in that condition on September 21, 1906. Under the rule prevailing in this State, appellant, in making proof to show the mental infirmity of the witness, was required to pursue the usual and well-recognized procedure which obtains in other cases in which there is an inquiry into the mental capacity of a person. It is well settled under our decisions that upon the question of a person's sanity the opinion of a nonexpert witness must be based or predicated upon the facts given or detailed by him to the jury or the court trying the cause, and that the naked opinion of such witness in regard to the sanity or mental condition of a person is not competent. *Turner* v. *Cook* (1871), 36 Ind. 129; *Sutherland* v. *Hankins* (1877), 56 Ind. 343; *Walker* v. *State* (1885), 102 Ind. 502; *Grubb* v. *State* (1889), 117 Ind. 277; *Hamrick* v. *State, ex rel* (1893), 134 Ind. 324; *Rarick* v. *Ulmer* (1896), 144 Ind. 25; *Blume* v. *State* (1900), 154 Ind. 343; 12 Am. and Eng. Ency. Law (2d ed.), 492. For the reasons stated, the court did not err in sustaining the objections of the State to the question as propounded to the witness Slayback.

Counsel for appellant next argue that the trial court erred in allowing the State to introduce evidence tending to prove that at the time of, and prior to the homicide, im-

2. proper relations existed between appellant and William Russell, a bartender in the employ of the deceased. Over the objections of appellant, witnesses testified to seeing Russell at various times at the home of appellant in the absence of her husband; that he would remain with her for hours at a time. It was shown that upon two occasions she clandestinely met Russell upon the streets of the city of LaFayette at a late hour of the night, and that she was accustomed to accompany him to the restaurants. The evidence of which appellant complains tends to show improper conduct on the part of appellant, a married woman, in her associations with Russell; or, in other words, its tendency is to prove that the relations existing between them were at least questionable, or not consistent with her marital relations and duties. Counsel earnestly argue that the evidence in question could serve no other purpose than to prejudice the jury against appellant, by showing that she had been unfaithful to her marriage vows. On the other hand, counsel for the State contend that the evidence was proper and competent to be considered by the jury for the purpose of showing a motive on the part of the accused for committing the crime with which she is charged. The State clearly was entitled to place before the jury as evidence any circumstances which might suggest a possible motive on the part of the accused for perpetrating the unnatural crime of killing her husband. The jury possibly might believe from the evidence that Russell had so alienated her affections that she desired the death of her husband, and therefore was induced to kill him for that reason. Whether the evidence was sufficient to justify this belief was a matter for the determination of the jury. That it was, however, competent for the purpose for which it was introduced, is well settled. *Hinshaw* v. *State* (1897), 147 Ind. 334, 367;

*People* v. *Nileman* (1887), 8 N. Y. St. Rep. 300; Gillett, Indirect and Collat. Ev., §59, and authorities cited in note 2.

Appellant, on request, would certainly have been entitled to an instruction limiting or confining the consideration of this evidence by the jury to the purpose for which it was introduced by the prosecution.

Error is predicated upon the refusal of the court to give, upon request, instructions thirty-three, thirty-four and thirty-six. By these charges the court was requested to

3. define the law in respect to circumstantial evidence. In order to support their view that these charges should have been given, counsel for appellant state certain circumstances in the case in respect to the relation existing between appellant and Russell, which they assert render the instructions applicable. They say in their brief: ''The State introduced evidence with reference to the visits of Russell to the home of the decedent in his absence, and that he spent hours with appellant there; also with reference to clandestine meetings upon the street corners at belated hours, and to conversations that were held over the bar on the day of the shooting; also with reference to her conduct with other men. All of these circumstances they say were relied upon by the State to convict appellant of murder in the first degree, and without which manslaughter could have been the highest degree of punishment inflicted upon appellant.'' The State contends that the case at bar is not one which depends, to any extent, for conviction upon circumstantial evidence. Its counsel insist that every material fact was testified to by eyewitnesses, and further argue that the circumstances enumerated by appellant's counsel were not relied upon to establish premeditation or malice; that any circumstances in evidence, as to appellant's conduct or acts relative to her relation with Russell, were introduced only for the purpose of showing a motive on the part of appellant for committing the crime. As we view the question, we are of the opinion that the charges in controversy were prop-

erly refused. For the reasons advanced by the State they were not applicable to the evidence in the case, and for this reason, if for no other, the court was justified in refusing to give them to the jury. It may be said, however, that in charge number eleven, which was given at the request of appellant, the court advised the jury in regard to the consideration to be accorded to circumstantial evidence. This instruction was all upon the question of circumstantial evidence that appellant could in reason demand.

By instruction fifteen, given at the request of the State, the court advised the jury that if they found from the evidence in the case "that the defendant was in a place where she had a right to be, and, without fault on her part, was attacked by the deceased with such force and violence and in such a manner as to lead the defendant to believe, and that she had reasonable grounds to believe, that she was in danger of being killed, or of suffering great bodily harm from said Charles A. Lawson, and to prevent this the defendant then and there shot said Charles A. Lawson, on account of which shooting said Lawson then and there died, the defendant is not guilty." Counsel for appellant criticise this instruction, and insist that it is erroneous, for the reason that it places the burden upon appellant of proving that she was free from fault. Continuing, they say: "While we recognize the well-settled rule in this State, that before a person can avail himself of the right of self-defense he must be without fault, we at the same time earnestly contend that nowhere can it be found under the authorities of this State that the burden of proving that such party was without fault is upon him. This is one of the material facts that must be proved by the State." Instructions containing the phrase, "without fault," have been frequently sustained by this court in cases in which the issue of self-defense was involved. *Story* v. *State* (1884), 99 Ind. 413; *Deilks* v. *State* (1895), 141 Ind. 23, and cases cited.

We, however, fully concur in the contention of counsel for

appellant that upon the issue of self-defense in the case at bar the burden of proving beyond a reasonable doubt

5. the fact that the defendant was at fault in the first. instance in bringing on or provoking the difficulty, or, in other words, that she was the aggressor, rested upon the prosecution and not upon the accused. 6 Ency. Ev., 598, and authorities cited; *Naugher* v. *State* (1894), 105 Ala. 26, and cases cited.

But manifestly the objection urged against the instruction by appellant's learned counsel is not well taken. Certainly, in reason, the charge, when considered in connection with the other instructions in the case, cannot be said to be open to the criticism that it impliedly or otherwise casts the burden on appellant of proving her freedom from fault at the time of the homicide.

Again, if the charge in controversy could be said to be erroneous upon the ground urged by appellant, she is not in a position to complain, for she may be said to have

6. invited the error by procuring the court, upon her request, to give the jury two other instructions—numbered fifteen and sixteen—containing the same phrase, "being without fault." By tendering these instructions to the court, with the request that they be given to the jury,. appellant thereby affirmed that they correctly stated the law and should be given without any modification. Consequently appellant is now precluded from complaining of the one in controversy upon the ground that it contained the same phrase as that which was embodied in those which she procured the court to give to the jury at her request. Elliott, App. Proc., §630.

We have read and considered the evidence in the case, and, while there is some conflict therein, nevertheless it

7. amply sustains the verdict on every material point. Finding no error, the judgment is affirmed.