298 N.E.2d 503 (1973)
Robert S. SNIPES, Defendant-Appellant,
v.
STATE of Indiana, Plaintiff-Appellee.
No. 1-173A12.
Court of Appeals of Indiana, First District.
July 17, 1973.
Rehearing Denied August 15, 1973.
*504 Rice & Vanstone, William E. Weikert, Evansville, for defendant-appellant.
Theodore L. Sendak, Atty. Gen., Robert F. Colker, Asst. Atty. Gen., Indianapolis, for plaintiff-appellee.
LOWDERMILK, Judge.
Defendant-appellant was charged by affidavit with the offense of armed robbery; was arraigned and entered a plea of not guilty; he filed a special plea of insanity, at which time the court ordered him examined by two psychiatrists.
The State filed answer to defendant's special plea of insanity and the court determined the defendant was competent to stand trial. The cause was duly submitted to trial by jury.
The evidence, in brief, was that in the early morning of November 16, 1971, a Red Bird Service Station located in Evansville, Indiana, was robbed by two people, one of whom had a pistol. The attendant on duty at that time testified at the trial, over defendant's objection, and identified the defendant-appellant as being one of the two people who had robbed him on November 16, 1971.
At a line up for identification purposes defendant-appellant asked that attorney Lorin Kiely be present and was told that attorney Kiely could not be present at that time by a police officer who had called attorney Kiely, telling him of Mr. Snipes' request. This officer testified that when he told the defendant-appellant Mr. Kiely would not attend the line up, the defendant-appellant stated that it was all right, to forget it, that he wouldn't need an attorney, and the proceedings continued on.
Defendant-appellant was arrested about 10:00 o'clock P.M. on November 16, 1971, and there was evidence he had been taking drugs during the day of November 15, 1971, and had eventually passed out. He had also been on drugs on November 16, 1971, before being taken into custody. Shortly after being arrested his stomach was pumped and he was described by one of the arresting officers as "being under the influence of something" and by another police officer as "kind of high." He was then returned to the jail from the hospital about midnight on November 16, 1971, and made a statement to the police about 3:30 to 4:00 o'clock A.M. the following morning.
The defendant was taken to court on the morning of November 17th and ordered to *505 be returned to his cell until such time as he recovered from his condition.
Evidence was adduced at the trial that on Christmas Day, 1971, thirty-nine persons, including the defendant-appellant, escaped the Vanderburgh County Jail.
Other evidence was introduced by defendant-appellant's father that the defendant-appellant had some psychiatric disturbance in his youth and again in 1971 and had been enrolled in a school for problem children. At the age of 18 years he went to Evansville and worked with the Rev. John DeSanto.
The elder Snipes testified that in his opinion his son was irrational and did not know right from wrong.
Evidence was offered by the State of Dr. Charles Crudden, a psychiatrist, who testified the defendant was not psychotic on the date of the examination and he could not determine his sanity at the date of the act.
Dr. Alfred Niedermayer testified the defendant was healthy other than the fact he was a drug addict and further that he thought the defendant needed and deserved a chance for treatment.
On this evidence the jury returned its verdict of guilty of armed robbery and on which verdict the defendant-appellant was sentenced to ten years at the Indiana Department of Corrections.
A motion to correct errors was timely filed; it was overruled by the court and this appeal perfected.
Each of the alleged errors in the motion to correct errors is identified and treated under their separate headings as set out in the summary of the argument.

No. 1. Did the court err in excluding the testimony of Rev. DeSanto in regard to defendant's sanity?
Defendant-appellant contends that he was prejudiced and did not have a fair trial for the reason the court refused to allow Rev. DeSanto to express his opinion as to defendant's sanity for consideration of the jury.
Rev. DeSanto testified that he had had some contacts with the appellant as early as October, 1970. His testimony discloses that he did not have any close relationship with the appellant at any time and most particularly from December, 1970, through February, 1971. The witness, having a major in college psychology and experience as a minister, recognized that the appellant was resuming his drug addiction in early 1971. Rev. DeSanto tried to talk to the appellant on at least two occasions to halt the addiction but was unsuccessful. His last contact with the appellant was in February, 1971, some nine months before the hold up. Rev. DeSanto did interview the appellant many times after the crime.
At trial Rev. DeSanto was asked his opinion as to the sanity of the appellant at the time of the crime. The State's objection to this type of testimony was sustained. Appellant contends the trial court committed reversible error in excluding this testimony and relies on the case of Hill v. State (1969), 252 Ind. 601, 251 N.E.2d 429, wherein Justice Hunter quoted from the case of McDonald v. U.S. (1962), 114 U.S.App.D.C. 120, 312 F.2d 847, as follows:
"`... We emphasize that, since the question of whether the defendant has a disease or defect is ultimately for the triers of fact, obviously its resolution cannot be controlled by expert opinion. The jury must determine for itself, from all the testimony, lay and expert, whether the nature and degree of the disability are sufficient to establish a mental disease or defect as we have now defined those terms. ...'" (Our emphasis.)
Speaking further, the court held,
"... The jury, as the trier of facts, remains the sole sentinel in the protection of both the rights of the accused *506 and the welfare of society, enabled finally to consider all relevant facts pertaining to the defendant's mental state at the time the act was committed, and being thereby better qualified to render its ultimate moral judgment under the law." (Our emphasis.)
See, also, Johnson v. State (1970), 255 Ind. 324, 264 N.E.2d 57.
Appellant also cites the case of Faught v. State (1973), Ind.Ct. of App., 293 N.E.2d 506, 35 Ind.Dec. 500, wherein, after discussing Justice Hunter's comments in Hill, supra, Judge Lybrook stated:
"... He also emphasized that the jury should be given all relevant evidence upon that subject and not be bound by medical terminology or narrow `right/wrong' principles, ...
* * * * * *
The above language makes it crystal clear that Indiana still affords a criminal defendant the opportunity to present relevant, competent, and material evidence, to support his plea of insanity." (Our emphasis.)
It is the appellant's position that the above quoted cases permit the testimony of non-expert witnesses as to opinions of a defendant's sanity when a factual basis for such an opinion is presented to the jury.
The State contends that lay opinions as to sanity are generally inadmissible and that Rev. DeSanto's contact with the appellant was too far removed from the crime to be relevant.
The case of Grubb v. State (1888), 117 Ind. 277, 284, 20 N.E. 257, 261, holds:
"... Insanity is a fact that can not be proven by reputation, nor can it be proven by a witness who is not an expert, unless the witness first gives the facts upon which his opinion is based. [Cases cited omitted.]"
In the case of Lawson v. State (1908), 171 Ind. 431, 436, 84 N.E. 974, 976, our Supreme Court said:
"... It is well settled under our decisions that upon the question of a person's sanity the opinion of a non-expert witness must be based or predicated upon the facts given or detailed by him to the jury or the court trying the cause, and that the naked opinion of such witness in regard to the sanity or mental condition of a person is not competent... ."
This court has examined the testimony of Rev. DeSanto carefully and it is our opinion that the trial court properly excluded his opinion as to the appellant's sanity. The cases quoted herein firmly establish the principle that lay opinions are sometimes admissible but the underlying theme is that the opinion and factual basis must be relevant. Here, Rev. DeSanto had no contact at all with the appellant from February, 1971, until December, 1971. His contacts with the appellant were minimal. He was not qualified as an expert. Thus, the trial judge properly found the testimony was not relevant and did not err.

No. 2. Did the court err in allowing evidence of another crime?
Defendant-appellant contends that the court erred in admitting evidence of the jailbreak, at which time he walked out of the jail with others although he was not a party to the conspiracy to break jail.
In the State's opening statement the prosecuting attorney told the jury of the jailbreak and that defendant-appellant had left with the others. Defendant-appellant objected but did not move for a mistrial and the trial court made the following remark: "If I were in jail, I expect I would walk out if the door was open even though I was not guilty. It's pretty far off. I don't think it's competent evidence."
The transcript shows that in the State's rebuttal evidence the State went into the jailbreak proposition without objection being made thereto.
We are of the opinion that there is no merit in defendant-appellant's contention *507 as to the jailbreak, as evidence of attempted escape is relevant to the question of guilt and may be considered by the jury.
In Layton v. State (1968), 251 Ind. 205, 240 N.E.2d 489, our Supreme Court said:
"From time immemorial it has been held that evidence on flight or evidence or escape while being held on a charge is admissible upon the issue of guilt of the defendant."

No. 3. Did the court err in allowing a tainted identification of the defendant based upon a line up at which defendant was denied his constitutional right to an attorney?
Defendant-appellant contends that his identification by the service station attendant was tainted because he contends he was denied his right to counsel at a pre-indictment line up.
He relies on the cases of U.S. v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.
Wade and Gilbert are post-indictment line up cases where appointed legal counsel were not present.
Judge Staton of this court, in a well reasoned opinion in Auer v. State (1972), Ind.Ct. of App., 289 N.E.2d 321, discussed the Wade and Gilbert cases and held in Auer that inasmuch as Auer was not in custody nor under arrest and charged at the time of the identification he was not identified at a critical stage of the criminal prosecution and explicit guarantees of the Sixth Amendment are not applicable to the line up in Auer.
Our Supreme Court has declined to extend the right to counsel to pre-indictment line ups and therefore we must find that there is no merit in defendant-appellant's third specification of error. Kirby v. Illinois (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; Moore v. Oliver (1972), 347 F. Supp. 1313.

No. 4. Did the court err in allowing a statement made by the defendant while under the influence of drugs?
Defendant-appellant contends that he did not properly waive his constitutional rights in giving a statement as the same was not done voluntarily and intelligently, as required in Miranda v. State of Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
The hold up took place on November 16, 1971, about 4:00 o'clock in the morning and the defendant-appellant was taken into custody about 10:00 o'clock P.M. the same night. As he was being taken to jail he was observed by an officer slipping something into his mouth and which he swallowed, became incoherent and was taken to a hospital and his stomach immediately pumped out. This took about forty-five minutes and he was then taken to the station and booked. Later that morning, from 3:30 to 4:00 o'clock A.M. he made a statement to police officers. It is this statement he now contends was not properly introduced into evidence as he did not knowingly, voluntarily, and intelligently give the same as required under State v. Fitzgerald (1970), 254 Ind. 39, 257 N.E.2d 305.
The record discloses defendant-appellant in the absence of the jury, gave evidence as to the circumstances under which he gave his written statement and in which he denied being advised of his right to counsel and pauper counsel if he needed such; his right to refuse to give a statement which could be used against him; and he further maintained that he was under the influence of narcotic drugs and incompetent at that time to know and comprehend his actions and what he said.
Deputy Sheriff Eddie Allen was present at the time the statement was taken and testified "I believe he was coherent, I believe he understood the situation."
*508 Charlie Gibbs, a Deputy Sheriff, testified that the defendant was advised of his constitutional rights, which were read to him, and that defendant-appellant told him that he understood his rights and was willing to sign them. The officer further testified that the defendant-appellant spoke clearly and read the statement aloud before he signed it.
In the case of Smith v. State (1969), 252 Ind. 425, 431, 249 N.E.2d 493, 496, our Supreme Court said:
"When the evidence in the record is in conflict as to whether the confessions or statements were voluntarily given, the Supreme Court will not disturb the Trial Court's ruling based on the conflicting evidence. [Cases cited omitted.]"
Our Supreme Court said, in the case of Hoelscher v. State (1944), 223 Ind. 62, 68, 57 N.E.2d 770, 772:
"... This is a question of fact to be determined primarily by the trial court, and unless we can say that upon the evidence there can be no reasonable difference of opinion, the decision of the trial court must stand... ."
Gates v. State (1962), 243 Ind. 325, 183 N.E.2d 601.
Further there is sufficient evidence to sustain the verdict from the evidence of the victim and defendant-appellant's accomplice.
Our Supreme Court stated, in Easton v. State (1972), Ind., 280 N.E.2d 307, 310:
"... We have long held that the admission of improper evidence which tends only to disclose a fact clearly proved by other legitimate and uncontradicted evidence is harmless error... ."
See, also, Shank v. State (1972), Ind. Ct. of App., 289 N.E.2d 315.
We have examined the record and find that there was sufficient evidence to support the trial court's finding that the statement was admissible.

No. 5. Did the court err in instructing the jury that intoxication was not a defense?
Defendant-appellant contends that State's Instruction No. 3 concerning the voluntary use of drugs was improper and timely submitted his written objection to the same, citing the case of Easton v. State, supra, as authority that voluntary intoxication will excuse an offense in which a specific intent is required and therefore State's Instruction No. 3 was not supported by the law.
Robbery is not a "specific intent" crime. IC 1971, XX-XX-X-X, Burns Ind. Stat. Ann. § 10-4101 reads, in part, as follows:
"Whoever takes from the person of another any article of value by violence or putting in fear, is guilty of robbery ..."
As contended by the State, the statute does not mention "intent" and therefore the instruction is correct where the only intent required was a general criminal intent.
The same instruction was given in Madden v. State (1970), 254 Ind. 628, 261 N.E.2d 847 which was a case involving burglary and theft. The intent required to prove a charge of armed robbery is no more "specific" than the intent required in other mala in se offenses.
We therefore hold that the objection to State's tendered Instruction No. 3 is without merit and the instruction was properly submitted to the jury.

No. 6. Did the court err in instructing the jury that it could base a finding of guilty on the deterrent effect such a verdict would have on society?
State's Instruction No. 4 reads as follows, to-wit:
"The Court instructs you that while you have no right to find the defendant guilty for the sole purpose of deterring others from committing crimes, you may *509 consider the deterrent effect your sentence will have in deterring others from committing similar crimes."
Appellant relies on Article I of the Constitution of the State of Indiana, which establishes the principle that the criminal code shall be founded on the principles of reformation and not vindictive justice. Appellant argues that Instruction No. 4, supra, would allow the jury to find him guilty based on the deterrent effect such a verdict would have on society rather than on the basis of evidence of guilt or innocence.
Both parties rely on the case of Shack v. State (1972), Ind., 288 N.E.2d 155. In Shack, supra, the defendant tendered and the court refused to give the following instruction:
"`You have no right to find the defendant guilty only for the purpose of deterring others from committing the same act.'" (Our emphasis.)
Justice Hunter discussed that instruction as follows:
"... Although we agree with the sentiment expressed in the instruction, we do not agree that it was erroneous to refuse to give it... ."
We note that the Shack instruction used the word "only," while the Instruction No. 4 in the case at bar simply tells the jury that the deterring effect of a verdict of guilty was a consideration the jury could take. Additionally, Instruction No. 4 states unequivocally that no guilty verdict could be returned for the "sole" purpose of its deterrent effect.
An examination of the other instructions given to the jury shows that the jury was properly instructed and that the appellant could be found guilty only if the evidence proved beyond a reasonable doubt all of the elements of the offense charged.
Thus, it is our opinion that the jury was properly instructed. While Instruction No. 4 is not a model instruction, and we see no useful purpose in giving it, no error was committed when said instruction was given and we cannot find where the appellant could have been prejudiced by said instruction.
Judgment affirmed.
ROBERTSON, P.J., and LYBROOK, J., concur.