307 So.2d 433 (1975)
Learie Leo ALFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 44647.
Supreme Court of Florida.
January 29, 1975.
Rehearing Denied February 19, 1975.
*435 David Roth, of Cone, Wagner, Nugent, Johnson & McKeown, and Joel T. Daves III, of Burdick & Daves, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
ADKINS, Chief Justice.
Again we consider the constitutionality of the Florida murder statute, Fla. Stat. § 782.04 and § 921.141, F.S.A., which we upheld in State v. Dixon, 283 So.2d 1 (Fla. 1973). Jurisdiction to hear this cause lies in Fla. Const., art. V, § 3(b)(1), F.S.A.
Appellant, Learie Leo Alford (hereinafter referred to as defendant), a 27-year-old male, was convicted of the rape and murder of a 13-year-old female.
On Sunday, January 7, 1973, the deceased left her home to meet her girl friend at a neighborhood bus stop so the two could go to the beach together. Later that day, her body was discovered lying atop a trash pile in an area west of Riviera Beach. She had been raped and shot to death, execution style; her nude body was found blindfolded, with bullet wounds in her head, chest, back and arm.
Several witnesses described a man wearing a white hat and fitting Alford's description and a car similar to the one driven by him present at or near the scene of the crime at about 10:30 a.m., the approximate time of death.
Ballistic experts stated that at least one of the projectiles found in the victim's body came from the pistol of defendant's supervisor, Willie White. White, a security guard, testified that on the morning of January 7th, he had given the pistol to Alford when the latter relieved him of duty at the freight yard where he worked.
Pursuant to a search warrant which authorized a search of defendant's dwelling for spent .38 caliber cartridge casings, various items of clothing, including a floppy white hat, were seized. The clothing indicated the presence of blood factors A and O. Also, cotton swabs taken from the vaginal and anal area of victim's body indicated the presence of blood factors A and O. The victim's blood type was A; defendant's blood type is O.
The only defense raised by appellant at the trial was alibi. He denied involvement in the crime.
After finding the defendant guilty of murder in the first degree, the jury in a separate sentencing proceeding pursuant to Fla. Stat. § 921.141, F.S.A., recommended the death penalty. The trial judge then made his written findings of fact required by Fla. Stat. § 921.141(3)(b), F.S.A. Although the defendant had no significant history of prior criminal activity, the trial judge gave as a reason for imposing the death sentence the following aggravating circumstances: The capital felony of murder in the first degree was committed while the defendant was engaged in the commission of, or in flight after committing a life felony, which was rape, and of which he was convicted in the same trial; this capital felony was especially heinous, atrocious and cruel.
This appeal is from the judgment of guilt and sentence to death.
Defendant first contends that Fla. Stat. § 782.04, F.S.A., taken in conjunction with *436 the penalty provisions found in Fla. Stat. § 921.141, F.S.A., is unconstitutional and violates the dictates of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Defendant recognizes that this Court upheld the statute in State v. Dixon, supra, but says that we should recede from this decision because discretionary death penalties are unconstitutional or, in the alternative, the imposition of the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
We reaffirm the decision in State v. Dixon, supra, holding that the mere presence of discretion in the sentencing procedure does not violate Furman v. Georgia, supra. This Court, in State v. Dixon, said:
"Discretion and judgment are essential to the judicial process, and are present at all stages of its progression  arrest, arraignment, trial, verdict, and onward through final appeal. Even after the final appeal is laid to rest, complete discretion remains in the executive branch of government to honor or reject a plea for clemency. See Fla. Const., art. IV, § 8, F.S.A., and U.S. Const., art. II, § 2.
"Thus, if the judical discretion possible and necessary under Fla. Stat. § 921.141, F.S.A., can be shown to be reasonable and controlled, rather than capricious and discriminatory, the test of Furman v. Georgia, supra, has been met. What new test the Supreme Court of the United States might develop at a later date, it is not for this Court to suggest." 283 So.2d 1, pp. 6 and 7.
The procedure outlined in Fla. Stat. § 921.141, F.S.A., is such that the discretion is controlled and channeled until the sentencing process becomes a matter of reasonable judgment rather than an exercise in discretion at all.
Furthermore, capital punishment is not, per se, violative of the constitution of the United States or of Florida. See Wilson v. State, 225 So.2d 321 (Fla. 1969).
Defendant next contends that the Legislature failed to adequately distinguish between felony murder in the first degree and felony murder in the second degree, in that these provisions are so ambiguous that the same act may constitute either first degree or second degree murder, depending upon the whim of the prosecutor. This question was also laid to rest in State v. Dixon, supra, which we reaffirm on this point also. For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation, the United States Supreme Court will take the statute as though it read precisely as the highest Court of the State has interpreted it. An authoritative construction of a state statute by the Supreme Court of Florida is binding as to what the statute does or does not mean. See Wainwright v. Stone and Huffman, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
The first and second contentions of defendant, attacking the constitutionality of the capital punishment statute as well as the procedure thereunder, are without merit.
Defendant next contends the trial judge committed prejudicial error by admitting evidence that the defendant and another man attempted to engage in an homosexual act immediately prior to the commission of the offense charged.
It is settled law in this State that evidence of any facts relevant to a material fact in issue, except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. Williams v. State, 110 So.2d 654 (Fla. 1959).
The trial judge in the case sub judice admitted testimony that defendant and another *437 man attempted to engage in anal intercourse in the hour preceding the rape and murder of the victim. Defendant says such evidence was irrelevant and constituted an improper assault on the character of the defendant, prejudicing him in the minds of the jury.
The State says that defendant's unfulfilled desire to have sexual relations with another man led to the abduction of the victim and the sexual assault upon her. The other man testified that he and the defendant were unsuccessful in engaging in anal intercourse due to the presence of other people in the area. Thus the State maintains that sexual frustration resulting from the inability to complete the homosexual act occurring around 9:30 a.m., was the motive for the sexual assault on the victim occurring between 10:00 a.m. and 11:00 a.m. the same day. Accordingly, the State maintains the testimony was relevant and admissible.
In State v. Statewright, 300 So.2d 674, (Fla. 1974), the State attempted to show that the motive for the murder was the accused's fear that the deceased would publicly reveal the accused's alleged homosexuality, the accused supposingly having made improper advances to the deceased. We held that testimony relating to a homosexual act allegedly committed by the accused some five years prior to the crime for which he was tried was relevant to the issue of motive.
Commonwealth v. Winter, 289 Pa. 284, 137 A. 261 (1927), is a well-reasoned decision with facts similar to those in the instant case. The facts disclosed a sadistic murder of two children, a brother and sister, one seven years old and the other nine. Evidence was admitted that within an hour of the time when he met them, the accused tried unsuccessfully to solicit the victims' older brothers to commit sodomy. The Court stated:
"The courts are bound to recognize, particularly in crimes relating to matters of sex ... that the mental state of the accused is an important factor; anything which throws light upon his state of mind just previous to the commission of the offense with which he is charged strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it....
"Our conclusion is that the evidence of defendant's solicitation of the two other children to commit an unnatural crime was properly received as showing his state of mind on the day in question shortly before the commission of the crime with which he was charged, and the motive which governed him in seeking to have the two deceased children accompany him, and in their subsequent murders." 137 A. 261, pp. 263, 264.
In Lawson v. State, 171 Ind. 431, 84 N.E. 974 (1908), the defendant was charged with and convicted of the murder of her husband, which she claimed was done in self-defense. In permitting the introduction of evidence of her improper relations with another man, the court said:
"The state clearly was entitled to place before the jury as evidence any circumstances which might suggest a possible motive on the part of the accused for perpetrating the unnatural crime of killing her husband. The jury possibly might believe from the evidence that Russell had so alienated her affections that she desired the death of her husband, and therefore was induced to kill him for that reason. Whether the evidence was sufficient to justify this belief was a matter for the determination of the jury. That it was, however, competent for the purpose for which it was introduced, is well settled." 84 N.E. 974, p. 976.
In Kallas v. State, 227 Ind. 103, 83 N.E.2d 769 (1949), the State argued that the accused killed the victim because of his resistance to the unnatural advances of the accused. The court held that the accused's prior act of homosexuality and unnatural *438 lust was a manifestation of an abnormal mental condition and therefore relevant to establish the motive and intention with which he killed his victim.
Based on the foregoing, we hold that the circumstances surrounding the earlier unfulfilled sexual act were relevant to establish the state of mind of appellant and the motive for the assault on the victim occurring only a short time thereafter. Such evidence also was relevant to rebut alibi testimony. The trial court did not err in admitting such testimony.
The trial court allowed into evidence items of clothing taken from defendant's home under color of a search warrant which authorized a search for shell casings.
The defendant was arrested on Tuesday, January 9, 1973, at 1:55 a.m., two days after the crime was committed. The officers obtained and executed the search warrant later the same day. Defendant had signed two consent forms authorizing the search of his car and his apartment.
During the course of the search of the apartment, the officers discovered in plain view certain items of clothing subsequently introduced into evidence at the trial. These items were part of the circumstantial evidence leading to the conviction of appellant.
At the time of the search the defendant was in custody at the Palm Beach County Jail.
Testimony showed that the police were aware of the possible existence of these items of evidence approximately three hours after the body of the victim was discovered at about 3:00 o'clock Sunday afternoon. The search was conducted at approximately 7:00 o'clock Tuesday evening. The items of clothing were discovered inadvertently, in plain view during the course of a thorough search for the cartridges, none of which were found.
Defendant's primary contention is that the seizure of the items of clothing went beyond the scope of the search warrant. Relying on the Fourth Amendment to the United States Constitution, Fla. Const., art. I, § 12, F.S.A., and Fla. Stat. § 933.07, F.S.A., defendant argues that each of these requires that warrants particularly describe the items to be seized; also, that Fla. Stat. § 933.14, F.S.A., provides for the return of property taken when it is not the same as that described in the warrant. Thus, asserts defendant, the seizure of the items of clothing, which were not fruits or instrumentalities of the crime, was error since they were not particularly described in the search warrant.
The seizure of the so-called "mere evidence" of a crime is not proscribed by the Fourth Amendment. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In Hayden, the defendant was closely pursued by police officers to his home. While searching for Hayden, the police discovered in a washing machine a jacket and trousers of the type the defendant was said to have worn, and a cap was found under a mattress. This evidence was allowed over defendant's objection that it was "mere evidence" and not the fruit or instrumentality of the crime. The United States Supreme Court held that there no longer is any valid reason to distinguish seizures of "mere evidence" from seizures of "fruits, instrumentalities, or contraband". Further:
"But if its [mere evidence rule] rejection does enlarge the area of permissible searches, the intrusions are nevertheless made after fulfilling the probable cause and particularity requirements of the Fourth Amendment and after the intervention of `a neutral and detached magistrate... .'" 387 U.S. 294, pp. 309, 310, 87 S.Ct. 1642, p. 1651.
Defendant also questions why the police did not include in the search warrant an *439 authorization to seize the items of clothing when the testimony indicates knowledge of their existence some 48 hours prior to the execution of the search warrant.
The search was conducted with the consent of the defendant and under authority of an admittedly valid warrant. A reasonable search for small items such as .38 caliber cartridges logically would lead to closets, drawers, clothes piles, and any other conceivable nook and cranny in which they could be found. Having authority and justification for being where they were, the officers were clearly warranted in seizing items found in plain view or discovered inadvertently during the course of a reasonable search of defendant's premises. There is nothing to indicate that the officers were conducting a general exploratory search or that the search for spent cartridges was a subterfuge or an excuse to conduct such a general exploratory search.
Fla. Stat. § 933.18, F.S.A., restricts the issuance of a search warrant for the search of a private dwelling to certain enumerated categories of property. Defendant contends that the statute does not authorize the issuance of a warrant to search for the items of evidence that were actually seized from the defendant's dwelling, and therefore the trial court erred in denying the defendant's motion to suppress. However, the statute provides that a warrant may be issued to search a dwelling if a weapon, instrumentality, or means by which a felony has been committed is contained therein. The search warrant issued in this case authorized the seizure of "spent .38 caliber cartridge casings." We hold that the shell casings constitute an "instrumentality or means" within the meaning of Fla. Stat. § 933.18(6), F.S.A.; therefore, the warrant was not issued in violation thereof. The fact that clothing, not shell casings, was located, does not invalidate the search warrant or the search itself.
The State, in this case, should not be held to the strict requirement that only those things particularly described in the warrant may be seized. This would fly in the face of the universally accepted "plain view" exception to the warrant requirement of the Fourth Amendment. The police are not required to close their eyes and turn their heads away from evidence inadvertently discovered during the course of a lawful search, the presence of which they had no prior knowledge. See Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Bretti v. Wainwright, 439 F.2d 1042 (5th Cir.1971).
We next consider the admissibility at trial of the testimony of a witness taken at the preliminary hearing.
Johnny Jones was a material witness in the State's case against Leo Alford. He lived directly across the street from the site of the crime. On January 7, 1973, the morning of the crime, Jones heard several shots being fired and observed a yellow Dodge or Plymouth back out of the area "fast." At the preliminary hearing he gave testimony regarding the identity of a certain white hat he saw being worn by the person driving the yellow car and also regarding some photographs of the same car. This testimony was read to the jury at the trial, over the objection of the defendant.
It appears that on March 19, 1973, the witness Jones was subpoenaed to appear at the trial, which was scheduled for April 16, 1973. On April 5, 1973, Jones notified the prosecuting attorney that he was leaving town within a few days to enter a hospital in Wisconsin. On April 11, 1973, the State's motion to perpetuate Jones' testimony was granted, but no attempt was ever made to do so.
Jones left the State after advising the prosecuting attorney and refused when requested to return. It appears that there was no medical reason why the witness could not return for trial.
On the third day of the trial, the State first advised the trial judge and defendant that Jones was not available and offered to *440 read the testimony given by Jones at the preliminary hearing. No attempt was made to take Jones' deposition.
The trial judge found that although there was some confusion concerning the motion to perpetuate testimony, the State tried in good faith to produce the witness and that his absence was not procured through contrivance of the State. The judge also found that counsel for defendant appeared at the preliminary hearing and was allowed full cross-examination of Jones and concluded that it would better serve the interests of justice to allow the reading to the jury of the testimony of the preliminary hearing taken before a magistrate rather than the reading of a deposition not taken before a magistrate. Further, the testimony was previewed outside the presence of the jury before being read to the jury. Finally, similar supportive testimony to that of witness Jones was given by two other competent witnesses at the trial.
Defendant takes the position that the opportunity for adequate cross-examination was not provided at the preliminary hearing because certain important witnesses and facts were not available to the defense for proper preparation for said cross-examination. Counsel also cites certain discrepancies in the testimony of Jones when compared to other witnesses whose testimony was not available or known at the preliminary hearing, resulting in prejudice to the defendant when the testimony of Jones was read to the jury and affecting his substantive rights.
Recently this Court held that a bystander could testify at trial as to his recollections of a witness' testimony at a preliminary hearing when the witness was unavailable at trial, even where no court reporter was present and no official record was made of the witness' testimony. Richardson v. State, 247 So.2d 296 (Fla. 1971). We said that a preliminary hearing is not distinguishable from a previous trial in the application of the "former testimony" exception to the hearsay rule. In Richardson, as in the case sub judice, there existed the additional safeguard of supportive testimony given in person at the trial by two other witnesses.
All procedural and evidentiary requirements prerequisite to the introduction of the "former testimony" appear to have been met. See James v. State, 254 So.2d 838 (Fla.App. 1st, 1971); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The testimony was admissible.
Defendant also complains because pictures of the deceased victim were admitted into evidence.
When a photograph is relevant it is admissible, unless what it depicts is so shocking in nature as to overcome the value of its relevancy. Williams v. State, 228 So.2d 377 (Fla. 1969). Therefore, relevancy is the initial determination. The defendant contends that the photographs were not relevant since no contention was made that a horrible crime had not been committed. The defense was that the defendant did not commit the crime.
In his opening statement to the jury the defendant's counsel stated that he did not know whether the victim was raped, nor whether "the necessary force and violence" was used. One of the four photographs showed that the deceased had been blindfolded and had sustained numerous bullet wounds. Thus, they were relevant to prove "force and violence."
Once it has been established that the photographs are relevant, it must then be determined whether the gruesomeness of the portrayals is so inflammatory as to create an undue prejudice in the minds of the jury, and thereby overcomes the value of their relevancy. We take note that the trial judge allowed in evidence only four photographs depicting the body of the victim and none of those were duplications. Additionally, the trial judge ruled inadmissible a close-up photograph of the victim's *441 vaginal area revealing injury to that area. This court in Williams v. State, supra, stated that "the view depicted is neither gory nor inflammatory beyond the simple fact that no photograph of a dead body is pleasant." That same rationale applies with full force herein. The pictures were admissible.
After the defendant was adjudicated guilty of the capital felony of first degree murder, a separate sentencing proceeding was conducted pursuant to Fla. Stat. § 921.141, F.S.A., which provides:
"(1) Separate Proceedings On Issue Of Penalty.  Upon conviction or adjudication of guilt of a defendant of a capital felony the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment as authorized by section 775.082. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If the trial jury has been waived or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose unless waived by the defendant. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7) of this section. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitutions of the United States or of the State of Florida. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.
"(2) Advisory Sentence By The Jury.  After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
"(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (6);
"(b) Whether sufficient mitigating circumstances exist as enumerated in subsection (7), which outweigh the aggravating circumstances found to exist, and
"(c) Based on these considerations, whether the defendant should be sentenced to life [imprisonment] or death.
"(3) Findings In Support Of Sentence Of Death.  Notwithstanding the recommendation of a majority of the jury, the court after weighing the aggravating and mitigating circumstances shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
"(a) That sufficient aggravating circumstances exist as enumerated in subsection (6), and
"(b) That there are insufficient mitigating circumstances, as enumerated in subsection (7), to outweigh the aggravating circumstances.
"In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (6) and (7) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with section 775.082.
"(4) Review of Judgment and Sentence.  The judgment of conviction and *442 sentence of death shall be subject to automatic review by the Supreme Court of Florida within (60) days after certification by the sentencing court of the entire record unless the time is extended for an additional period not to exceed (30) days by the Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the Supreme Court.
"(5) Aggravating Circumstances.  Aggravating circumstances shall be limited to the following:
"(a) The capital felony was committed by a person under sentence of imprisonment.
"(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.
"(c) The defendant knowingly created a great risk of death to many persons.
"(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive-device or bomb.
"(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
"(f) The capital felony was committed for pecuniary gain.
"(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
"(h) The capital felony was especially heinous, atrocious or cruel.
"(6) Mitigating Circumstances.  Mitigating circumstances shall be the following:
"(a) The defendant has no significant history of prior criminal activity.
"(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
"(c) The victim was a participant in the defendant's conduct or consented to the act.
"(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
"(e) The defendant acted under extreme duress or under the substantial domination of another person.
"(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
"(g) The age of the defendant at the time of the crime."
Several witnesses were called by the defendant who testified as to his good character. The jury recommended the death penalty.
The trial judge then made his written findings of fact required by the following provisions of Fla. Stat. § 921.141(3)(b):
"(b) That there are insufficient mitigating circumstances, as enumerated in subsection (7), to outweigh the aggravating circumstances.
"In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (6) and (7) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the *443 death sentence, the court shall impose sentence of life imprisonment in accordance with section 775.082."
With respect to the above-mentioned provisions he found that aggravating circumstances (d) and (h) had been established beyond a reasonable doubt, as had mitigating circumstances (a), saying:
"... Upon my review of both trials, of my trial notes and of the pre-sentence investigation, I find as follows with respect to aggravating circumstances and mitigating circumstances:
"AGGRAVATING CIRCUMSTANCES. 
"(a) The defendant in this case was not under sentence of imprisonment for any other crime.
"(b) The defendant has never been convicted of another capital felony or of a felony involving the use or threat of violence to another person.
"(c) The defendant did not knowingly create a great risk of death to many persons.
"(d) This capital felony of murder in the first degree was committed while this defendant was engaged in the commission of or in flight after committing a life felony which was rape and of which he was also convicted in the same trial.
"(e) This capital felony was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
"(f) This capital felony was not committed for pecuniary gain.
"(g) This capital felony was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
"(h) This capital felony was especially heinous, atrocious and cruel.
"MITIGATING CIRCUMSTANCES. 
"(a) This defendant has no significant history of prior criminal activity.
"(b) This defendant was not under the influence of extreme mental or emotional disturbance when the capital felony was committed.
"(c) The victim of this capital felony was not a participant in the defendant's conduct nor did she consent to his acts.
"(d) This defendant was not an accomplice in the capital felony committed; he was the only participant.
"(e) This defendant did not act under extreme duress or under the substantial domination of another person in the commission of this capital felony.
"(f) The capacity of this defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
"(g) The age of this defendant at the time of the commission of the crime is not a factor, he having reached his majority some years prior to the commission of the crime... .
"With respect to my finding that this capital felony was especially heinous, atrocious or cruel, I observe that I have been engaged in the administration of criminal justice since 1959. During that period of time I have observed a number of brutal and conscienceless crimes. Compared against that experience, the criminal acts of this defendant are particularly shocking, heinous, atrocious and cruel. In this respect, I cite the scene of the crime, the victim as depicted by photographs introduced into evidence in this case and the testimony of the pathologist describing the wounds, damage and injury occasioned to that pathetic child's body. It is inexpressibly cruel."
The court concurred in the jury's sentence of death.
*444 As we noted in State v. Dixon, supra, the most important safeguard provided by Fla. Stat. § 921.141, F.S.A., is the propounding of aggravating and mitigating circumstances which must be determinative of the sentence imposed. We thoroughly analyzed these circumstances in Dixon, and no further elaboration is necessary. We repeat, however, that:
"The aggravating circumstances of Fla. Stat. § 921.141(6), F.S.A., actually define those crimes  when read in conjunction with Fla. Stat. §§ 782.04(1) and 794.01(1), F.S.A.  to which the death penalty is applicable in the absence of mitigating circumstances. As such, they must be proved beyond a reasonable doubt before being considered by judge or jury... .
"Fla. Stat. § 921.141(6)(d), F.S.A., provides that the commission of a capital felony as part of another dangerous and violent felony constitutes not only a capital felony under Fla. Stat. § 782.04(1), F.S.A., but also an aggravated capital felony. Such a determination is, in the opinion of this Court, reasonable... .
"The aggravating circumstance which has been most frequently attacked is the provision that commission of an especially heinous, atrocious or cruel capital felony constitutes an aggravated capital felony. Fla. Stat. § 921.141(6)(h), F.S.A. Again, we feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily tortuous to the victim.
"When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overriden by one or more of the mitigating circumstances provided in Fla. Stat. § 921.141(7), F.S.A. All evidence of mitigating circumstances may be considered by the judge or jury....
"It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. Review by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will one man die and another live on the basis of race, or a woman live and a man die on the basis of sex. If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great. Thus, the discretion charged in Furman v. Georgia, supra, can be controlled and channeled until the sentencing process becomes a matter of reasoned judgment rather than an exercise in discretion at all." 283 So.2d 1, pp. 9, 10.
The trial judge found that the premeditated murder of the deceased victim was committed while defendant was engaged in the commission of or in flight after committing the life felony of rape of the same victim, and that the act was especially heinous, atrocious and cruel. The only mitigating circumstance was that the defendant had no significant prior criminal *445 record. Additionally, the evidence of defendant's guilt in these crimes was particularly strong, discounting the possibility of an "innocent" man being sentenced to die.
In Taylor v. State, 294 So.2d 648 (Fla., 1974), we reversed the trial court's imposition of the death sentence where, unlike the case sub judice, the jury recommended a life sentence. However, in Taylor the mitigating circumstances clearly outweighed the aggravating circumstances. Not only did Taylor have no prior history of criminal activity, but in fact he had been shot five times during the exchange of gunfire in which the decedent was fatally wounded. It also appeared that the downward trajectory of the fatal bullet raised the possibility that Taylor had not fired the shot since he was on the floor with five bullets in his body. We concluded that these factors could have substantially impaired the rationality of Taylor to the point that the jury rejected the death penalty.
In Sullivan v. State, 303 So.2d 632 (Fla. 1974) opinion filed November 27, 1974, the defendant committed the crime of robbery, abducted the victim, struck him with a tire iron, and shot him with both barrels of a shotgun in the back of the head. The defendant reloaded and discharged both barrels again into the victim's head. He then stated, "I don't feel no different." The defendant, 25-years old at the time, had no previous criminal record. The sentence of death was held by this Court to be appropriate.
In Hallman v. State, 305 So.2d 180 (Fla. 1974), opinion filed December 11, 1974, the defendant committed the crime of robbery, cut the victim about the throat and neck with broken glass, slitting her throat and causing her death. The defendant had been convicted of two previous crimes involving an assault upon a young woman with a dangerous weapon. This Court held that the sentence of death was appropriate.
In the case sub judice, the victim was a 13-year-old female child. On Sunday, January 7, 1973, she was to meet a friend at a neighborhood bus stop so that the two could go to the beach together. She left her home and was last seen by a neighbor as she walked down the street. Her body was discovered lying on a trash pile. She had been raped, both vaginally and rectally, was blindfolded, and shot five or six times. The defendant was a 27-year-old male with no significant record of prior criminal activity. This was an aggravated and most indefensible crime. The condition of the body is definite proof of the commission of a conscienceless or pitiless crime which was unnecessarily tortuous to the victim. Comparing the aggravating and mitigating circumstances with those shown in other capital cases and weighing the evidence in the case sub judice, our judgment is that death is the proper sentence.
Pursuant to Rule 6.16(b), Florida Appellate Rules, we have reviewed the evidence to determine whether the interest of justice requires a new trial. No reversible error is made to appear and the evidence does not reveal that the ends of justice require that a new trial be awarded. We find that the judgment and sentence of the trial court in this cause is in accordance with the justice of the cause.
Accordingly, the judgment and sentence of the circuit court are hereby affirmed.
It is so ordered.
ROBERTS, McCAIN and OVERTON, JJ., concur.
ERVIN (Retired), J., dissents.