905 So.2d 42 (2005)
Donald W. DUFOUR, Appellant,
v.
STATE of Florida, Appellee.
Donald W. Dufour, Petitioner,
v.
James V. Crosby, Jr., Respondent.
Nos. SC03-1326, SC04-232.
Supreme Court of Florida.
April 14, 2005.
Rehearing Denied June 14, 2005.
*48 Bill Jennings, Capital Collateral Regional Counsel  Middle, Marie-Louise Samuels Parmer, Assistant CCRC-M, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Scott A. Browne, and Kimberly Nolen Hopkins, Assistant Attorneys General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Donald W. Dufour appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated herein, we affirm the circuit court's denial of Dufour's rule 3.850 motion and deny his habeas petition.

FACTS AND PROCEDURAL HISTORY
Donald Dufour was convicted of the first-degree murder of Zack Miller. See Dufour v. State, 495 So.2d 154, 156 (Fla. *49 1986). The jury unanimously recommended the death penalty. See id. at 157. Following that recommendation, the trial court imposed a sentence of death for the first-degree murder charge. See id. On direct appeal, the Court affirmed Dufour's conviction and sentence. See id. at 156. There, the Court detailed the facts surrounding the murder:
The evidence at trial established the following scenario. State witness Stacey Sigler, appellant's former girlfriend, testified that on the evening of September 4, 1982, the date of the murder, appellant announced his intention to find a homosexual, rob and kill him. He then requested that she drop him off at a nearby bar and await his call. About one hour later, appellant called Sigler and asked her to meet him at his brother's home. Upon her arrival, appellant was going through the trunk of a car she did not recognize, and wearing new jewelry. Both the car and the jewelry belonged to the victim.
Appellant had met the victim in the bar and driven with him to a nearby orange grove. There, appellant robbed the victim and shot him in the head and, from very close range, through the back. Telling Sigler that he had killed a man and left him in an orange grove, he abandoned the victim's car with her help.
According to witness Robert Taylor, a close associate of appellant's, appellant said that he had shot a homosexual from Tennessee in an orange grove with a .25 automatic and taken his car. Taylor, who testified that he had purchased from appellant a piece of the stolen jewelry, helped appellant disassemble a .25 automatic pistol and discard the pieces in a junkyard.
State witness Raymond Ryan, another associate of appellant's, also testified that appellant had told him of the killing, and that appellant had said "anybody hears my voice or sees my face has got to die." Noting appellant's possession of the jewelry, Ryan asked him what he had paid for it. Appellant responded "You couldn't afford it. It cost somebody a life." Ryan further testified that he had seen appellant and Taylor dismantle a .25 caliber pistol.
Henry Miller, the final key state's witness, testified as to information acquired from appellant while an inmate in an isolation cell next to appellant's. In return for immunity from several armed robbery charges, Miller testified that appellant had told him of the murder in some detail, and that appellant had attempted to procure through him witness Stacey Sigler's death for $5,000.
At the penalty phase of the trial, Taylor testified over objection to the details of a Mississippi murder for which appellant had been convicted of first-degree murder. The jurors unanimously recommended death and appellant was so sentenced.
Id. at 156-57.
In sentencing Dufour to death, the trial judge found four aggravating circumstances  that Dufour was previously convicted of another capital felony; the murder was committed while Dufour was engaged in the commission of armed robbery; the murder was committed for the purpose of avoiding or preventing lawful arrest; and the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial judge found no mitigation. On direct appeal, this Court upheld Dufour's conviction and sentence. See id. at 156.
On direct appeal, Dufour asserted sixteen issues. See id. at 157-64. Although this Court denied fifteen of the claims, we *50 held that the trial court erroneously found that the murder had been committed for the purpose of avoiding a lawful arrest, section 921.141(5)(e), Florida Statutes (1981), because the evidence failed to establish the requisite proof of an intent to avoid arrest or detection through the killing. See id. at 163. Despite the trial court's erroneous finding that the murder was committed for the purpose of avoiding a lawful arrest, the sentence of death was upheld in light of the three remaining aggravating factors and the complete lack of mitigation. See id.
Dufour timely filed his amended motion for postconviction relief. A hearing was held pursuant to Huff v. State, 622 So.2d 982 (Fla.1993), after which the lower court ordered an evidentiary hearing on the following claims: (1) ineffective assistance of pretrial and guilt phase counsel; (2) due process violations arising from the court-appointed psychiatrist's failure to conduct appropriate tests for organic brain damage and mental illness; and (3) evidence of the State's bad faith in failing to preserve evidence. The trial court determined that Dufour was not entitled to an evidentiary hearing on his remaining claims.
The evidentiary hearing was held on November 18, 2002, through November 21, 2002. Dufour presented the testimony of his brother, George Dufour; Raymond Dvorak, Dufour's trial counsel; Dr. Jonathan Lipman, a mental health expert; Dr. Sherry Burg-Carter, a forensic psychologist; and Dr. Robert Berland, a mental health expert. The State presented Dr. Sidney Merin, a mental health expert; Assistant State Attorneys, Dorothy Sedgwick and Frank Tamen; Diane Payne, lead detective in Dufour's case; William Vose, general counsel for the Orange County Sheriff's Office; and Paul Cohen, another of Dufour's trial counsel.
On May 30, 2003, the trial court issued an order denying Dufour's claims. In his appeal of the trial court's decision, Dufour presents ten claims.[1] Dufour's appeal is accompanied by a petition for writ of habeas corpus in which Dufour advances four claims for relief.[2]

3.850 APPEAL
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel *51 claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Ineffective assistance of counsel claims present a mixed question of law and fact and therefore are subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1032 (Fla.1999). Under this standard, the Court conducts an independent review of the trial court's legal conclusions while giving deference to the trial court's factual findings. See id.
There is a strong presumption that trial counsel's performance was not ineffective. Strickland provides: "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." 466 U.S. at 689, 104 S.Ct. 2052. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S.Ct. 2052. The defendant alone carries the burden to overcome the presumption of effective assistance: "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. 2052. The United States Supreme Court explained that
a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.
Id. at 690, 104 S.Ct. 2052; see also Asay v. State, 769 So.2d 974, 984 (Fla.2000) ("[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional standards and was not a matter of sound trial strategy."). Finally, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. It is under this legal framework that Dufour's claims will be addressed.

Failure to Investigate and Present a Voluntary Intoxication Defense
Dufour asserts that trial counsel was ineffective for failing to investigate and present a voluntary intoxication defense, and that if counsel had done so, it could have been demonstrated that Dufour lacked the requisite specific intent to commit premeditated murder. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Rolling v. State, 825 So.2d 293, 298 (Fla.2002) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). This Court has repeatedly held that evidence of voluntary intoxication is admissible to prove the defendant *52 lacked the specific intent to commit premeditated murder. See Spencer v. State, 842 So.2d 52, 63 (Fla.2003); Chestnut v. State, 538 So.2d 820, 822 (Fla.1989). In addition, this Court has emphasized that "voluntary intoxication is an affirmative defense and that the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged." Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985). Under these guidelines, Dufour's claim fails.
The record demonstrates that Dufour's trial counsel considered a voluntary intoxication defense but rejected it for strategic reasons. Specifically, his attorney testified at the postconviction evidentiary hearing that he considered the voluntary intoxication defense and even discussed it with his partner. However, he ultimately rejected this approach because it was his view that the most persuasive position in the case would be to advance that Dufour did not commit the killing. Further, the attorney, Dvorak, stated that developing the intoxication defense was difficult because the information he discovered, particularly that of Dufour's girlfriend, Stacey Sigler, was that Dufour was sober at the time of the crime, and that a psychiatric opinion did not indicate whether Dufour was intoxicated at the time of the murder.[3] Dvorak also testified that Dufour did not provide any indication to him that he was intoxicated the day of the murder. The attorney also considered Sigler's testimony that Dufour advised her before the murder occurred of his plan and intent to select an individual to be his robbery victim. Notably, Dvorak testified that he had no desire or intent to present inconsistent theories and defenses to the jury.
This Court has held that it will not second-guess counsel's strategic decisions concerning whether an intoxication defense will be pursued. See Jones v. State, 855 So.2d 611, 616 (Fla.2003); see also Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (holding that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct"). In State v. Williams, 797 So.2d 1235 (Fla.2001), this Court analyzed whether trial counsel was ineffective for failing to present a voluntary intoxication defense at trial and concluded that counsel could not be deemed ineffective for failing to pursue such defense when the defense would have been inconsistent with Williams' theory of the case that he did not commit the crime. See id. at 1239. Similarly, here, pursuing a voluntary intoxication defense in Dufour's case would have been totally inconsistent with the defense theory presented that Dufour did not commit the murder.
The theory of the case advanced during Dufour's trial was that he did not commit the crime but that Robert Taylor, the leader of Dufour's gang, committed the murder. Therefore, similar to this Court's conclusion in Williams, we conclude that *53 counsel cannot be deemed ineffective for failing to pursue a voluntary intoxication defense when it would have been inconsistent with Dufour's theory of the case that he did not commit the crime. Moreover, the evidence known to trial counsel totally undermined the validity of a voluntary intoxication defense. See Stewart v. State, 801 So.2d 59, 65-66 (Fla.2001) (rejecting a claim that trial counsel was ineffective for not pursuing a voluntary intoxication defense where trial counsel testified the defendant had provided a detailed account of the crime and the State's potential experts would reveal the defendant's competency to stand trial). Dvorak made a reasonable strategic decision against arguing inconsistent defense theories to the jury.
Dufour actually relies upon the theory that, as a result of his longstanding addiction to drugs and alcohol, he could not have formed the requisite specific intent to commit premeditated murder. Perhaps recognizing that he had no valid claim that he was actually intoxicated at the time of the offense, Dufour is now attempting to assert that his chronic drug and alcohol abuse had a lasting impact, and that he was under the effects of the drugs and alcohol at the time of the crime. This Court addressed a similar argument in Pietri v. State, 885 So.2d 245 (Fla.2004), where we rejected the assertion that the lasting impact of one's chronic drug abuse while he had little or no cocaine in his bloodstream at the time of the offense was sufficient to establish that he was under the effects of the cocaine to the same extent as if he were legally intoxicated. See id. at 253. Dr. Lipman was the only witness at the evidentiary hearing who opined that Dufour was in a state of chronic intoxication at the time of the murder. However, as in Pietri, even if Dufour's trial counsel had called Dr. Lipman to testify, because Dufour has failed to demonstrate that he was actually intoxicated at the time of the murder, it is unquestionable that the testimony of Dr. Lipman would have been inadmissible. See Pietri, 885 So.2d at 254 (determining that mental health expert's opinion of chronic intoxication is inadmissible in the absence of evidence establishing actual intoxication at the time of the offense). This is really an attempt to present a hidden diminished capacity defense. Moreover, presenting the position that the murder was caused by Dufour's longstanding addiction to drugs and alcohol that would have prevented him from forming the specific intent required for the crime again would have been inconsistent with the defense theory of the case that Dufour did not commit the crime.
In sum, the record demonstrates that trial counsel made an informed and reasoned decision not to pursue a voluntary intoxication defense, which was inconsistent with the underlying defense theory of the case. Moreover, Dufour failed to establish that the defense was viable because he could not demonstrate that he was actually intoxicated at the time of the offense. On this basis, Dufour has failed to demonstrate that his trial counsel was ineffective for failing to present a voluntary intoxication defense. Therefore, we deny Dufour's claim.

Failure to Strike Jurors
Dufour asserts that his trial counsel was ineffective during voir dire in failing to strike jurors Cheryl Frazier and Polly Sullen, who Dufour claims should have been discharged because of their views in favor of the death penalty. Jurors who initially express views pertaining to the death penalty are permitted to serve if they clearly indicate an ability to abide by the trial court's instructions. See Johnson v. State, 660 So.2d 637, 644 (Fla.1995); Bryant v. State, 656 So.2d 426, 428 (Fla. *54 1995); Penn v. State, 574 So.2d 1079, 1080-81 (Fla.1991). This Court has previously determined that
[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court. Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). In applying this test, if "any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause." Hill v. State, 477 So.2d 553, 556 (Fla.1985).
Bryant, 656 So.2d at 428. Further, in Johnson, this Court reasoned:
On this question, the trial court is in the best position to observe the attitude and demeanor of the juror and to gauge the quality of the juror's responses. If there is competent record support for the trial court's conclusions regarding rehabilitation, then the appellate courts of this state will not reverse the determination on appeal based on a cold record.
Johnson, 660 So.2d at 644.
Our decision in Penn is particularly instructive in the present case. There, a prospective juror initially indicated that he favored the death penalty. See Penn, 574 So.2d at 1080. After further questioning by the trial court and the state, the prospective juror stated that he would follow the law as instructed. See id. This Court held that the trial court had not abused its discretion in refusing to excuse the juror for cause because he had demonstrated his competency by stating that he would base his decision on the evidence and instructions. See id. at 1081. Similarly, in Bryant, the challenged jurors expressed support for the death penalty during initial voir dire and even a predisposition to impose the death penalty if the defendant was convicted of first-degree murder. See Bryant, 656 So.2d at 428. However, upon further questioning, five of the challenged jurors stated that either they would follow the trial court's instructions or that they would weigh the aggravating and mitigating factors to determine whether death was the appropriate sentence. See id. As in Penn, this Court held that the trial court did not abuse its discretion in refusing to excuse these five prospective jurors. See id.
Although the record indicates that juror Frazier initially indicated that if the murder was premeditated one should probably receive the death penalty, Frazier then stated that she would not vote for the death penalty in every premeditated murder situation, but would listen closely to factors that might favor the individual after being further advised as to the appropriate criteria. Significantly, Frazier clearly indicated that she could proceed with the guilt and penalty phases and consider according to applicable law whether the aggravating factors outweighed the mitigating factors. Therefore, notwithstanding that Frazier did initially express views pertaining to the death penalty, Frazier was properly permitted to serve because she clearly indicated an ability to follow the trial court's instructions and weigh the aggravating and mitigating factors. See Johnson, 660 So.2d at 644; Bryant, 656 So.2d at 428; Penn, 574 So.2d at 1080-81.
Dufour makes the same challenge as to juror Sullen, claiming that she also voiced a predisposition to impose death. However, upon questioning by defense counsel, juror Sullen specifically stated that she did not believe that every premeditated murder should by punished by death. Juror Sullen also stated that she could weigh and consider the aggravators and mitigators in *55 making a determination with regard to whether to recommend life or death. Defense counsel Dvorak asserted an unsuccessful challenge for cause to juror Sullen. Based on the record, we conclude that the trial court properly determined that juror Sullen could follow the trial court's instructions and the law. The trial court, therefore, did not abuse its discretion in denying Dufour's challenge for cause to juror Sullen, nor was counsel ineffective. Accordingly, we deny Dufour's claim with regard to both jurors Frazier and Sullen.

Ineffective Assistance of Penalty Phase Counsel
Dufour asserts that his penalty phase counsel was ineffective for failing to properly investigate and present available mitigating evidence. He contends that had additional evidence been presented it would have established numerous mitigating factors. Specifically, Dufour asserts that trial counsel (1) should have consulted a second expert with regard to Dufour's mental health; (2) should have investigated and presented evidence of Dufour's family and childhood; (3) failed to investigate Dufour's drug and alcohol abuse; (4) should have presented evidence of Dufour's prison record at Lantana Correctional Institute; and (5) should not have presented Stacey Sigler as a mitigation witness. Each of these claims will be addressed in turn.
Pursuant to Strickland, trial counsel has an obligation to conduct a reasonable investigation into mitigation. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052. When evaluating claims that counsel was ineffective for failing to present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)). Moreover, as the United States Supreme Court recently stated in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003):
[O]ur principal concern in deciding whether [counsel] exercised "reasonable professional judgment[t]" is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence. . . was itself reasonable. In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time."
Id. at 522-23, 123 S.Ct. 2527 (citations omitted) (third alteration in original).
Dufour asserts that his trial counsel was deficient in failing to consult a second mental health expert after receiving an unfavorable and unprofessional report from the confidential mental health expert consulted, Dr. Gutman. Dvorak testified at the evidentiary hearing that Dr. Gutman was retained to examine Dufour with regard to competency for trial and at the time of the offense, as well as for mitigating information relating to Dufour's background. Dr. Gutman's report indicated that he not only evaluated whether Dufour was competent but also fully evaluated Dufour's mental health status. Dr. Gutman found that Dufour had antisocial behavior, showed little signs of a conscience, and had average intelligence. Dr. Gutman concluded Dufour was competent at the time of the offense and for trial. Dr. Gutman could not provide any psychiatric dynamic or reason behind the killing and he did not indicate that Dufour was in any way unaware of what he was doing.
*56 Dvorak testified that he did not seek nor did he have any reason to seek a second mental health opinion and did not engage in further investigation to find evidence of mental illness or brain damage. Dvorak stated that Dr. Gutman's opinions were so strong that there did not appear to be any prospect for a more favorable opinion. Dufour's other trial counsel, Cohen, confirmed that Dr. Gutman's report reflected negatively on Dufour. Cohen testified that Dr. Gutman did everything Cohen would have expected an expert to have done in 1984. Concerned with virtually everything Dr. Gutman stated in the report being revealed at trial, they decided not to call Dr. Gutman as a witness. Moreover, the defense team determined that introducing a mental health expert would have opened the door for the State to elicit evidence with regard to Dufour's background, including facts surrounding a double homicide Dufour committed in Florida, which occurred prior to the Miller homicide.[4]
As this Court has noted, to prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). The first inquiry requires the demonstration of "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Under this analysis, Dufour has failed to demonstrate that counsel was deficient in securing a mental health expert. Although counsel did not seek a second opinion, the record clearly reflects that counsel attempted to secure a mental health expert, had no reason to doubt that expert's negative conclusions, and made an informed decision not to present a mental health expert. There was evidence of clear justification for not utilizing Dr. Gutman as a witness, see Asay v. State, 769 So.2d 974, 984 (Fla.2000) ("[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional standards and was not a matter of sound trial strategy.").
Moreover, this is not a case where counsel never attempted to meaningfully investigate mitigation. See id. at 985 ("This Court has found counsel's performance was deficient where counsel `never attempted to meaningfully investigate mitigation' although substantial mitigation could have been presented.") (citing Rose v. State, 675 So.2d 567, 572 (Fla.1996)). Counsel is entitled to great latitude in making strategic decisions. See Rose, 675 So.2d at 572. In those cases where counsel has conducted a reasonable investigation of mental health mitigation prior to trial and then made a strategic decision not to present this information, this Court has affirmed the trial court's findings that counsel's performance was not deficient. See Asay, 769 So.2d at 985.
Here, trial counsel was not ineffective simply because after receiving an initial unfavorable report from Dr. Gutman they did not proceed further to seek additional experts for mental mitigation evidence. In *57 Asay, the defendant's original penalty phase counsel engaged a psychiatrist who diagnosed Asay with antisocial personality disorder, but found that Asay did not exhibit an "emotional or cognitive disturbance." Id. at 985. In that case, the Court concluded that the defendant's attorney was not deficient in deciding to discontinue his investigation for mental health mitigation after receiving an initial unfavorable report from an examining psychologist. See id. at 986.
Similar to Asay, we conclude Dufour's trial counsel was not deficient where, after receiving the initial unfavorable report from an examining mental health expert, Dvorak did not retain an additional expert. Furthermore, Dr. Gutman's evaluation is not rendered less competent simply because Dufour was able to provide conflicting testimony at the evidentiary hearing. See Jones v. State, 732 So.2d 313, 320 (Fla.1999) (stating that the evaluation by a mental health expert is not rendered less competent simply because the appellant provided conflicting testimony). Based on the record, we conclude that trial counsel conducted a reasonable investigation into mental health mitigation, which is not rendered deficient simply because Dufour was able to secure more favorable mental health testimony in the postconviction proceeding.
Dufour asserts that Dvorak's testimony at the evidentiary hearing reveals that his decision not to seek further opinions was based on ignorance of Florida law, and was not an informed strategic decision. Specifically, Dufour alleges that Dvorak did not seek a second opinion after receiving Dr. Gutman's report because Dvorak testified that he did not want to give the State access to Dr. Gutman or his report. Because experts are confidential, Dufour asserts that the State would not have had access to the identity of defense counsel's experts, and, therefore, Dvorak's decision not to retain another expert was deficient performance.
However, testimony presented at the evidentiary hearing belies Dufour's argument that opposing counsel would not have become aware that Dr. Gutman and other experts were being retained by the defense. Specifically, Assistant State Attorney Dorothy Sedgwick testified that in 1984 the procedure for court-appointed attorneys in capital cases to obtain an expert involved filing a motion with the court for funds. The motion would include the expert's name, thereby placing the State on notice of the expert's identity. Thus, Dvorak testified that had he asked for a second expert the State would have known that Dr. Gutman's opinion of Dufour was negative. Additionally, there was nothing to suggest that Dr. Gutman was incompetent or that Dufour had any condition produced by mitigating factors. Based on these factors, Dufour's argument that Dvorak's decision not to seek a second opinion was based on ignorance of the law instead of a sound trial strategy is unpersuasive.
Moreover, this Court has previously recognized that "[t]rial counsel is not deficient where he makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony." Griffin v. State, 866 So.2d 1, 9 (Fla.2003); see also Reed v. State, 875 So.2d 415, 437 (Fla.2004) ("An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword."). Dvorak testified at the evidentiary hearing that he was concerned that if Dr. Gutman's report was revealed, it would likely have opened the door for damaging evidence to be introduced to the jury that would have depicted Dufour as a sociopath who knew what *58 he was doing at the time of the murder. See Ferguson v. State, 593 So.2d 508, 510 (Fla.1992) (finding counsel's decision to not utilize mental health experts to be "reasonable strategy in light of the negative aspects of the expert testimony" where experts had indicated that defendant was malingering, a sociopath, and a very dangerous person); see also Reed, 875 So.2d at 437 ("[T]his Court has acknowledged in the past that an antisocial personality disorder is `a trait most jurors tend to look disfavorably upon.'") (quoting Freeman v. State, 852 So.2d 216, 224 (Fla.2003)). Under these circumstances, Dufour cannot now second-guess a strategic decision employed by defense counsel. See Brown v. State, 846 So.2d 1114, 1125 (Fla.2003) (emphasizing that the Court will not second-guess counsel's strategic decisions on collateral attack).
Moreover, Dufour has failed to demonstrate that he suffered prejudice as a result of defense counsel's decision not to obtain additional mental health opinions. At the evidentiary hearing, two mental health experts testified on Dufour's behalf. Dr. Jonathan Lipman, the defense neuro-pharmacologist, opined that Dufour was in a state of chronic intoxication at the time of the murder. Dr. Lipman also opined that based on the combination of drugs and alcohol Dufour was likely suffering from an organic brain syndrome, and that a person in Dufour's condition would have an impaired ability to conform his conduct to the requirements of the law. Dr. Robert Berland testified that, although he was relying on incomplete archival data, there was substantial information that would permit the conclusion that Dufour was under the influence of extreme mental or emotional disturbance at the time of the crime. Dr. Berland further testified that, although there was no evidence that Dufour had a substantial impairment in his capacity to appreciate criminality, the nature of Dufour's mental illness impaired his capacity to conform his conduct to the requirements of the law at the time of the crime. In addition, Dr. Sherry Buorg-Carter, the defense psychologist, could not state to what extent Dufour's alcohol and substance abuse influenced him in connection with the murder or his capacity to appreciate the wrongfulness of his conduct. However, she did testify to the extreme mental and emotional disturbance mitigator simply because at the time of the incident he would have been diagnosed with chronic substance abuse disorder. Further, she testified that the only other possible mitigator available in this case would have been Dufour's impaired capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. However, Dr. Carter's opinions relating to the statutory mitigators were limited because she admitted that she could not state to what extent Dufour's substance abuse affected or influenced the murder, nor could she state whether his capacity to appreciate the wrongfulness of his conduct was impaired when he committed the murder. The State also presented a mental health expert, Dr. Sidney Merin, whose opinion with regard to Dufour's mental state at the time of the crime contradicted that of the defense experts. Dr. Merin found that Dufour had and probably still has some mild neurocognitive impairment but not to the extent that would render Dufour incapable of planning, organizing, and thinking through his actions.
Simply presenting the testimony of experts during the evidentiary hearing that are inconsistent with the mental health opinion of an expert retained by trial counsel does not rise to the level of prejudice necessary to warrant relief. See Carroll v. State, 815 So.2d 601, 618 (Fla.2002) ("The fact that Carroll has now secured *59 the testimony of more favorable mental health experts simply does not establish that the original evaluations were insufficient."); see also Cherry v. State, 781 So.2d 1040, 1052 (Fla.2000) ("The fact that Cherry found a new expert who reached conclusions different from those of the expert appointed during trial does not mean that relief is warranted. . . ."). In assessing prejudice, "it is important to focus on the nature of the mental health mitigation" now presented. Rutherford v. State, 727 So.2d 216, 223 (Fla.1998). Neither expert presented by the defense in this postconviction proceeding rendered a strongly favorable opinion. Dr. Lipman admitted that he could only testify in generalizations as to the effects of drug abuse where the specifics of the offenses were in dispute. While Dr. Berland concluded that Dufour suffered from mental illness at the time of the murder, he also testified that it did not appear that any mental illness controlled Dufour's behavior. It is not reasonably probable, given the nature of the testimony offered by Drs. Berland and Lipman, that had the testimony been presented at the penalty phase it would "have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell, 490 So.2d at 932. Notably, there was substantial aggravation at issue in this case, including the CCP aggravator. Accordingly, we deny this claim.
Dufour next asserts that his trial counsel was ineffective for failing to investigate and present mitigating evidence during the penalty phase with regard to Dufour's family and childhood. In denying this claim, the lower court found:
At the hearing, trial counsel testified that the only member of Defendant's family that was willing to cooperate was Defendant's brother Gary. In fact, the record reflects that counsel brought out several facts about Defendant's background through his brother Gary, including that Defendant had been exposed to homosexuality by his brother George, (R.1587), and that Defendant started drug and alcohol abuse at a very young age. (R.1588). Counsel stated that he had contacted Defendant's brother George, but he had adamantly refused to get involved. In addition, Defendant himself did not want to get his family involved.
The State also argues that presentation of additional circumstances would have opened the door to the State's presentation of evidence of all the behavior problems which resulted. The evidentiary hearing demonstrated that experts commonly do an extensive background review of their subjects, and therefore, act as a vehicle to bring in prejudicial facts about the subject on cross examination. . . . [T]his Court finds that trial counsel reasonably decided to limit his presentation of Defendant's background.
The trial court properly rejected this claim. "An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Ventura v. State, 794 So.2d 553, 570 (Fla.2001) (quoting Rose, 675 So.2d at 571). The scope and nature of trial counsel's investigative effort and family contact distinguish this case from those in which this Court has made a determination of ineffective assistance of counsel. See, e.g., Ventura, 794 So.2d at 570 (deeming background investigation deficient where the defendant served as counsel's sole source for mitigating evidence); Ragsdale v. State, 798 So.2d 713 (Fla.2001). In Ragsdale, this Court held that counsel's failure to investigate and present available mitigating evidence was ineffective assistance where "counsel's entire investigation consisted *60 of a few calls made by his wife to Ragsdale's family members" and "counsel did not talk to any family members himself." Ragsdale, 798 So.2d at 719.
The evidence presented at the postconviction evidentiary hearing demonstrates that this is not a Ragsdale situation. Dvorak testified that he talked with Dufour's friends (fellow gang members), received information from Dufour's brother Gary, and spoke to Dufour's other brother George on the phone, but that George did not want to be involved. Moreover, Cohen, Dvorak's co-counsel, also unsuccessfully attempted to contact George again. Dvorak was also instructed by Dufour that he did not want his family involved. Dvorak obtained Dufour's school records and recalled receiving some records regarding Dufour's prior incarcerations. In addition, Dvorak did have reason to believe that Dufour had encountered some traumatic sexual experience in the past, but his investigation of this sexual abuse was rebuffed because none of Dufour's family members would discuss the matter with him. Based on the foregoing, Dufour has failed to establish that counsel was deficient in investigating his family and childhood background for mitigation.
Moreover, Dufour has totally failed to demonstrate prejudice. During the penalty phase, trial counsel did introduce information regarding Dufour's family and childhood through Dufour's brother Gary. Gary testified at trial that their father was an alcoholic, was very aggressive, created a very hostile environment in their home, and physically abused Dufour. Further, Gary testified during the penalty phase that Dufour was gay and had been exposed to homosexuality by his brother George, performed poorly in school, and began abusing drugs and alcohol at a very young age.
At the postconviction evidentiary hearing, only Dufour's brother George testified with regard to Dufour's family and childhood. George related that their father was an alcoholic and had many violent episodes; described Dufour's alcohol and drug use, which he indicated started at an early age; and described Dufour's homosexual lifestyle. George did not provide any information that was not communicated to the penalty phase jury by Dufour's brother Gary. Therefore, George's testimony, although possibly more detailed than Gary's testimony, would only have been cumulative. See Downs v. State, 740 So.2d 506, 516 (Fla.1999) (affirming trial court's denial of defendant's claims that counsel was ineffective for failing to investigate and present additional mitigating evidence where the additional evidence was cumulative to that presented during sentencing); Rutherford, 727 So.2d at 224-25 (same); Valle v. State, 705 So.2d 1331, 1334-35 (Fla.1997); see also Woods v. State, 531 So.2d 79, 82 (Fla.1988) ("[T]he testimony now advanced, while possibly more detailed than that presented at sentencing, is, essentially, just cumulative to the prior testimony. More is not necessarily better.").
Next, Dufour asserts that trial counsel was ineffective for failing to investigate and present mitigating evidence during the penalty phase with regard to Dufour's drug and alcohol abuse. The record, however, indicates that Dufour's trial counsel did conduct a reasonable investigation of Dufour's drug and alcohol abuse for possible mitigating evidence. Dvorak knew that Dufour had been involved with drugs and alcohol since he was very young. Further, counsel was aware of Dr. Gutman's report, which revealed that Dufour engaged in everything from drinking to using marijuana, acid, and heroin. Dvorak inquired of several witnesses concerning *61 the effects of drug and alcohol use on Dufour's actions at the time of the crime, but none provided helpful information. In addition, Dvorak was aware of Dufour's involvement in the Mississippi murders so he believed the best approach during trial was to consistently depict Dufour as a follower and a normal person. Therefore, Dvorak had no desire or intention to present Dufour's drug and alcohol abuse to avoid describing Dufour as a "drugged out drunken maniac." Dvorak's decision not to focus on Dufour's drug and alcohol abuse was an informed, strategic decision. Dufour has failed to satisfy his burden of proving that counsel's representation was unreasonable and was not a matter of sound trial strategy.
In addition, Dufour has failed to demonstrate prejudice. Evidence actually adduced during the penalty phase established Dufour's history of substance abuse. Both Gary Dufour and Stacy Sigler testified that Dufour had a serious history of abusing drugs and alcohol that began at a young age. Gary related that Dufour began drinking and abusing drugs at the age of fifteen, and that he would use drugs and alcohol on a daily basis. Sigler testified with regard to Dufour's drug and alcohol abuse around the time of the murder. Specifically, Sigler advised the jury that Dufour was primarily abusing cocaine at the time of the murder and that he consumed alcohol heavily on a daily basis. The evidence of Dufour's drug and alcohol problem introduced during the postconviction evidentiary hearing did not substantially differ from that presented during the penalty phase. See, e.g., Downs, 740 So.2d at 516 (affirming trial court's denial of defendant's claims that counsel was ineffective for failing to investigate and present additional mitigating evidence where the additional evidence was cumulative to that presented during sentencing). Therefore, we conclude that Dufour has not demonstrated and satisfied the requirement to show prejudice flowing from the failure to introduce additional evidence pertaining to his drug and alcohol use. See Maxwell, 490 So.2d at 932.
Next, Dufour asserts that his trial counsel was ineffective for failing to present Dufour's good prison record as mitigation evidence during the penalty phase. At the penalty phase, trial counsel did present the testimony of Sister Cathleen Spurlin, who ministered to Dufour while he was in prison in Mississippi, as evidence of Dufour's newfound faith. Specifically, Spurlin described some of her counseling sessions with Dufour at the jail where Dufour described to her his feelings of "peace and the love that he was experiencing in knowing God's love and his forgiveness."
However, the record before this Court completely lacks any evidence to sustain Dufour's claim of good behavior in prison. During the postconviction evidentiary hearing, Dufour failed to supply evidence with regard to his time at Lantana Correctional Institute. Dvorak recalled receiving some prison records, but he had no recollection of any importance. Dr. Berland was the only witness at the evidentiary hearing to even refer to Dufour's time in Lantana and merely stated that Dufour continuously used drugs in his life except for the period of time when he was in Lantana. It is interesting to note however that George testified that after Dufour was released from Lantana, Dufour began following a devil worshiper and robbing graves.
The record does reflect some information regarding Dufour's time in Lantana in the State's response to Dufour's postconviction motion. The State's response bolsters the conclusion that had trial counsel attempted to introduce Dufour's prison *62 record as mitigation in the penalty phase the door would have been opened to allow the admission of Dufour's negative behavior while at Lantana. Specifically, Dufour was denied gain time as a result of disciplinary action, was arrested for violating parole while in possession of a deerslayer's knife, and lost visiting privileges after improperly receiving money from visitors. Indeed, the evidence shows that Dufour was planning escape attempts while in custody at the time of trial. See Dufour, 495 So.2d at 162. Under these circumstances, we conclude that Dufour has failed to provide this Court with sufficient evidence to substantiate a claim that counsel was ineffective for failing to present information regarding Dufour's behavior at Lantana as mitigation.
Dufour asserts that his trial counsel was ineffective in presenting Sigler as a mitigation witness during the penalty phase. In denying this claim, the lower court held:
On direct examination, she stated that Defendant was very sweet and nice to her family, and that he had told her about his bad childhood. She also stated that Defendant did not want her to be a prostitute. On cross-examination, she conceded that her grandmother did not approve of her relationship with Defendant because her grandmother thought Defendant was a bad influence and "possibly a dangerous influence." She also conceded that her prostitution supported Defendant for several months, and that Defendant had brought people to her to have sex.
The Court concludes that there is no reasonable probability that the jury would have recommended a life sentence, had they not heard Ms. Sigler's concessions on cross-examination. Accordingly, relief is not warranted.
During the evidentiary hearing, Dvorak testified that he did consider whether it was advantageous to call Sigler as a mitigation witness in the penalty phase. Although he knew that presenting Sigler as a witness could open the door to some damaging testimony, he decided to present her with the hope that it would have a tremendous psychological impact on the jury. Particularly, it was Dvorak's view that the jury would be impacted by witnessing Sigler, who had helped convict Dufour, testify that he did not deserve to die. Further, Dvorak was of the view that he could minimize any negative information from Sigler much better than attempting to deal with the same evidence from an expert.
"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Even in hindsight, trial counsel appears to have made a sound strategic decision to present Sigler in an effort to sway the jury to find that Dufour was a person that should be spared from the death penalty. Although arguably trial counsel's strategy may have ultimately been unsuccessful, Dufour cannot now properly challenge an informed, strategic decision of counsel in the hindsight of postconviction. See Howell v. State, 877 So.2d 697, 705 (Fla.2004). Accordingly, Dufour has not overcome the evidence that counsel's conduct falls within the wide range of reasonable professional assistance, and, therefore, we deny this claim of ineffective assistance.
Dufour asserts that his trial counsel was also ineffective in failing to object to improper hearsay testimony. During the penalty phase, the State presented Thomas Mayfield, who was the attorney *63 responsible for the prosecution of Dufour for the Mississippi murder of Earl Wayne Peeples. Mayfield was asked to summarize the testimony of the pathologist who testified at Dufour's Mississippi trial. Dufour's trial counsel objected to this testimony as hearsay. The State responded that hearsay is admissible in penalty phase proceedings, and the court overruled the defense objection. Mayfield was permitted to summarize the pathologist's testimony regarding the wounds suffered by the victim in the Mississippi case and the force necessary to inflict the wounds. Mayfield also testified with regard to photographs of the scene of the Mississippi murder. The defense also objected to these photographs, which the trial court overruled.
Contrary to Dufour's assertion that his trial counsel was ineffective in failing to object to improper hearsay testimony, the record indicates that Dufour's trial counsel did object to both the admission of the testimony and accompanying photographs. Moreover, the trial court did not err in allowing Mayfield to provide testimony regarding details of the Mississippi murder. This Court has held that "it is appropriate in the penalty phase of a capital trial to introduce testimony concerning the details of any prior felony conviction involving the use or threat of violence to the person rather than the bare admission of the conviction." Rhodes v. State, 547 So.2d 1201, 1204 (Fla.1989). Further, this Court explained that "[t]estimony concerning the events which resulted in the conviction assists the jury in evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence." Id.; see also Jones v. State, 748 So.2d 1012, 1026 (Fla.1999) (holding that a police officer may give hearsay testimony concerning a defendant's prior violent felonies during the penalty phase).
Finally, contrary to Dufour's assertion that he was prejudiced because he was not able to rebut Mayfield's testimony, the record reveals that Dufour's counsel in fact did cross-examine Mayfield and then again cross-examined Mayfield after the State's re-direct, thereby undermining the contention that he was not afforded an opportunity to rebut Mayfield's hearsay testimony. See Rhodes, 547 So.2d at 1204 ("While hearsay evidence may be admissible in penalty phase proceedings, such evidence is admissible only if the defendant is accorded a fair opportunity to rebut any hearsay statements."). Based on the foregoing, we deny this claim.
Next, Dufour asserts that his trial counsel was ineffective for failing to object to the prosecutor's improper penalty phase closing argument. Specifically, Dufour claims the following argument was improper:
Do the aggravating factors outweigh any mitigating factors the defense can tell you? That is where you have to weigh the significance of a human life in our society versus a pretty piece of jewelry. It is custom made and unique.
I don't think too many people in the state of Florida think that having a piece of jewelry is worth taking a human life.
....
If you are going to return a recommendation that makes a legal or moral judgment about Donald Dufour's actions, the only verdict, the only recommendation would be that the sentence of death should be applied to him because society cannot tolerate this type of behavior that Donald Dufour has indulged in. He has killed not once, but twice.
When you return a recommendation, the verdict has to make a statement about the seriousness of the crime and *64 about the value of human life, the value of innocent human life.
Although trial counsel did not object to the prosecutor's comments, Dufour has failed to demonstrate that he was prejudiced. This Court has previously recognized that attorneys are afforded wide latitude in presenting closing arguments. See Ford v. State, 802 So.2d 1121, 1132 (Fla.2001). The control of these comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. See id.; see also Moore v. State, 701 So.2d 545, 551 (Fla.1997). The law requires a new trial only in those cases in which it is reasonably evident that improper remarks may have improperly influenced the jury to reach a more severe verdict of guilt than it would have rendered without the remarks. See Thomas v. State, 748 So.2d 970, 984 (Fla.1999).
In the present case, the prosecutor argued that the verdict should make a statement with regard to the seriousness of the crime and the value of human life. A "value of human life" argument is one in which the jury is asked to place a monetary value on the life of the decedent. See Wilbur v. Hightower, 778 So.2d 381, 383 (Fla. 4th DCA 2001). In McDonald v. State, 743 So.2d 501 (Fla.1999), the Court addressed the following statements by the prosecutor:
You know people in our society want to buy cars and clubs, the American way. The normal way is you get up in the morning and you go to work. And you punch a clock. You don't kill people for it. And that is what these men did. That is the value that they placed on human life.
Id. at 504. This Court determined that these comments did not "so taint[ ] the jury's verdict so as to warrant a new penalty phase proceeding." Id. at 505. Similar to the comments in McDonald which compared the desire to buy cars and clubs to the value of a human life, the State's comments here compared human life with a piece of jewelry.
In addition, in Doorbal v. State, 837 So.2d 940 (Fla.2003), this Court upheld the jury's recommendation of death, notwithstanding the following statements by the prosecutor:
[Griga has] already been moved into the bath tub so his blood could bleed out through the brain and what happens when Lugo calls? This is why you know that he is a cold-blooded killer. The bitch is cold. Those were his words. His words. The bitch is cold.
Not Lugo's words. Is that a value of human life? Does he deserve to spend the rest of his life in prison? See sisters and going to the library helping others? He deserves nothing. He deserves no mercy and he deserves no leniency. He deserves no respect....
It is about [Frank Griga's] goodness and about his well-being as a human. It is about Furton. It is the fact of what's left of them. He deserved no mercy for this.
Id. at 958 (alterations in original). The State's comments in Doorbal with regard to the "value of human life" were more egregious than the statements in the present case. We conclude that Dufour has failed to demonstrate that the comments here "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell, 490 So.2d at 932; see also Crump v. State, 622 So.2d 963, 971 (Fla.1993) (holding that the prosecutor characterizing the defense as an "`octopus' clouding the water in order to `slither away'" was not so outrageous as to taint the jury's finding of guilt or recommendation of death).
*65 Ultimately, while the prosecutor was obviously advocating the State's position that the instant case is one in which the death sentence is appropriate, the remarks did not reach the level of being deemed improper by this Court. Therefore, we conclude that trial counsel was not deficient in failing to object to the prosecutor's comments, and, irrespective of any deficiency, the prosecutor's comments did not taint the jury's verdict in such a way as to warrant a new penalty phase proceeding. Therefore, this claim is denied.
Dufour further asserts that his trial counsel was ineffective for failing to object to the improper penalty phase instruction that the crime was committed for the purpose of avoiding a lawful arrest. On direct appeal, this Court concluded that the penalty phase instruction that the crime was committed to avoid a lawful arrest was improper, concluding that the evidence failed to establish the requisite proof of an intent to avoid arrest or detection through the killing. See Dufour, 495 So.2d at 163. Thus, counsel should have objected to this instruction. However, irrespective of whether Dufour's trial counsel was deficient in failing to object, Dufour has failed to demonstrate prejudice. On direct appeal this Court upheld Dufour's death sentence, notwithstanding the trial court's erroneous finding on the avoiding arrest instruction, because the remaining three proper aggravating circumstances clearly outweighed any mitigating circumstances. Specifically, this Court stated: "Because the court below found three proper aggravating and no mitigating circumstances, the result it reached, in spite of the error as to one factor, was correct and the death penalty properly imposed." Id. at 164. Therefore, we conclude this claim is meritless.
Finally, Dufour is not entitled to relief on his cumulative error claim because the alleged individual claims of error are all without merit, and, therefore, the contention of cumulative error is similarly without merit. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); see also Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999).

Mental Health Evaluation
Dufour contends that he did not receive an adequate mental health evaluation as required under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). First, to the extent that Dufour is asserting a true Ake claim, and is not simply reasserting his ineffective assistance of counsel claim, it is procedurally barred because it could have been presented on direct appeal. See Marshall v. State, 854 So.2d 1235, 1248 (Fla.2003) (holding that appellant's claim that he was deprived of his right to an evaluation by a competent mental health expert pursuant to Ake was procedurally barred because it could have been presented on direct appeal); Moore v. State, 820 So.2d 199, 203 n. 4 (Fla.2002) (same); Cherry, 781 So.2d at 1047 (same).
Procedural bar notwithstanding, Dufour's Ake claim lacks merit. In Ake, the United States Supreme Court held that
when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
Id. at 83, 105 S.Ct. 1087. Dufour does not argue that he was denied access to a mental health professional. Dufour asserts that Dr. Gutman, the psychiatrist hired to *66 evaluate Dufour, did not provide competent mental health assistance because he did not perform an evaluation that would have revealed mitigating factors of brain injury, mental illness, borderline to mentally retarded I.Q., and sexual abuse.
The lower court in denying this claim stated:
At the evidentiary hearing, Dr. Merin indicated that he conducted several hours of extensive neuropsychological testing of Defendant. He also opined that Dr. Gutman's evaluation was characteristic of those done during the relevant time period. Ultimately, Dr. Merin made essentially the same conclusions of Defendant's mental capabilities as Dr. Gutman had prior to Defendant's trial.
Having listened to the testimony of the experts presented by Defendant, the Court acknowledges that some of their opinions of Defendant's mental state differed from those of Dr. Merin and Dr. Gutman. However, expert opinions will rarely be in agreement on all points. This Court concludes that Dr. Gutman's evaluation of Defendant was adequate and that there is no reasonable probability that the outcome of Defendant's trial court would have different [sic] had another expert been consulted.
Dufour has failed to demonstrate that he did not receive a competent mental evaluation. At the evidentiary hearing, Dufour's trial counsel testified that he provided Dr. Gutman with all materials that he had at the time. Dr. Gutman examined Dufour to determine his competency both for trial and competency at the time of the offense, as well as to determine anything regarding Dufour's background. Dr. Gutman concluded that Dufour was competent both at the time of the offense and for trial purposes and that there were no mental health issues contributing to his conduct.
At the evidentiary hearing, Dr. Merin testified that he did not find any evidence that Dufour was not capable of conforming his behavior to the requirements of the law and that there was no indication that he was substantially impaired by any kind of mental infirmity at the time he committed the crime. Moreover, Dr. Merin opined that Dufour's mild neurocognitive impairment was not sufficient to render him incapable of committing a premeditated act. Dr. Merin also testified that there was no indication that psychosis played a part in the crime, but instead all indications were that Dufour acted with logical reason and was not encumbered by any delusional symptom. Significantly, Dr. Merin testified that he reviewed Dr. Gutman's report and developed diagnostic conclusions that were similar to those of Dr. Gutman. On the basis of this record, we conclude that Dr. Gutman's examination was sufficient and thus Dufour received a competent mental health evaluation.

Cumulative Impact of Allegedly Improper Evidence
Dufour asserts that he was prejudiced by the cumulative impact of improper evidence that was presented to the jury. Specifically, Dufour alleges that there is a reasonable probability that the trial court requiring Dufour to appear in court shackled improperly influenced the jury;[5] that the jury was tainted by knowledge that a juror was excused because her husband received a strange telephone call;[6] that *67 the defense should have been allowed to interview the jurors;[7] that the victim's sister's testimony prejudiced the defense;[8] and that the State improperly placed Dufour's sexuality at issue.[9] All of the facts pertaining to this claim were known at the time of appeal. Therefore, we affirm the lower court's conclusion that this claim should have been presented on direct appeal. See Jones v. State, 845 So.2d 55, 72 n. 38 (Fla.2003) (determining that the procedural bar was correctly determined by the lower court because the defendant's claim that the trial judge improperly considered victim impact evidence could have and should have been presented on direct appeal); see also Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995); Roberts v. State, 568 So.2d 1255, 1258 (Fla.1990).

Trial Court Minimized the Jury's Role During Sentencing
Dufour contends that the trial court's comments with regard to the advisory role of the jury unconstitutionally minimized the jury's role in the sentencing process. This claim is procedurally barred because a claim of error regarding the instructions given by the trial court should have been presented on direct appeal and is not cognizable through collateral attack. See, e.g., Stewart v. State, 801 So.2d 59, 64 n. 6 (Fla.2001); Gorham v. State, 521 So.2d 1067, 1070 (Fla.1988).
Procedural bar notwithstanding, Dufour's claim is meritless. This Court has repeatedly determined that challenges to "the standard jury instructions that refer to the jury as advisory and that refer to the jury's verdict as a recommendation violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)" are without merit. Card v. State, 803 So.2d 613, 628 (Fla.2001); see also Brown v. State, 721 So.2d 274, 283 (Fla.1998) (holding that the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, do not denigrate the role of the jury, and do not violate Caldwell); Rose v. State, 617 So.2d 291, 297 (Fla.1993) (rejecting the claim that the sentencing jury was misled by instructions and argument that diluted their sense of responsibility pursuant to the rationale of Caldwell and that counsel was ineffective for failing to object because the jury instructions correctly informed the jury of its sentencing role); Mendyk v. State, 592 So.2d 1076, 1080-81 (Fla.1992) (rejecting Mendyk's position that counsel was ineffective for failing to object to an alleged Caldwell violation); Robinson v. State, 574 So.2d 108 (Fla.1991) (same); Combs v. State, 525 So.2d 853 (Fla.1988) (same).

State's Destruction of Physical Evidence
Dufour asserts that the State committed fundamental error by destroying exculpatory physical evidence, specifically hair found on a stick at the crime scene. Dufour contends that the hair was potentially exculpatory evidence because *68 testing revealed that the hair did not come from Dufour or the victim and therefore it would show that someone other than Dufour killed the victim. Dufour argues that the State's bad faith is established by the destruction of this evidence in violation of a court order.
The loss or destruction of evidence that is potentially useful to the defense violates due process only if the defendant can show bad faith on the part of the police or prosecution. See Guzman v. State, 868 So.2d 498, 509 (Fla.2003); see also Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (holding "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). This Court has previously recognized that "[u]nder Youngblood, bad faith exists only when police intentionally destroy evidence they believe would exonerate a defendant." Guzman, 868 So.2d at 509. Youngblood explained that the "presence or absence of bad faith for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 488 U.S. at 57 n. *, 109 S.Ct. 333; see also Guzman, 868 So.2d at 509.
Dufour argues that bad faith exists because the State destroyed evidence it had determined through testing to be exculpatory, in violation of a court order to preserve the evidence. Dufour has not shown that the hair sample would have in fact exonerated him or that the State ever believed it might. The testimony presented at the postconviction evidentiary hearing does not indicate that the prosecutors or police in this case destroyed evidence believing it had evidentiary value. One of the prosecutors, Dorothy Sedgwick, testified during the evidentiary hearing that she did not recall anything about the existence of a stick or about being contacted about the stick after Dufour's trial. Frank Tamen, another prosecutor in Dufour's case, also testified that he did not recall anything about a stick being evidence in the case. In addition, Diane Payne, the lead detective in Dufour's case, testified that she was the person in charge of the items that were taken into custody in Dufour's case. She testified that, even though documents indicated that she had authorized the destruction of the stick, she had no recollection of the destruction. Based on this testimony, Dufour has not shown that any State actor intentionally deprived him of evidence which the State actor believed to be exculpatory. "[B]ad faith exists only when law enforcement officers intentionally destroy evidence they believe would exonerate a defendant." Guzman, 868 So.2d at 509. Therefore, Dufour's claim of bad faith destruction of evidence fails.

Constitutionality of Florida's Death Penalty Statute
Dufour asserts that Florida's capital sentencing scheme violates his Sixth Amendment right and his right to due process under the holding of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court addressed the contention that Florida's capital sentencing scheme violates the United States Constitution under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002), and denied relief. See also Jones v. State, 845 So.2d 55, 74 (Fla.2003). We conclude that Dufour is likewise not entitled to relief on this claim. Furthermore, one of the aggravating circumstances found by the trial court in this case was Dufour's prior *69 conviction of a violent felony, "a factor which under Apprendi and Ring need not be found by the jury." Jones v. State, 855 So.2d 611, 619 (Fla.2003); see also Doorbal, 837 So.2d at 963 (rejecting Ring claim where one of the aggravating circumstances found by the trial judge was defendant's prior conviction for a violent felony), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Accordingly, we reject Dufour's claim.

Challenge to Commission of a Felony Aggravator; CCP Instruction; and Shifting the Burden of Proof During the Penalty Phase
Dufour asserts that Florida's capital felony sentencing statute is unconstitutional because every person who is convicted of first-degree felony murder automatically qualifies for the aggravating circumstance of commission during the course of an enumerated felony. This Court has repeatedly rejected the argument that the murder in the course of a felony aggravator is an unconstitutional automatic aggravator. See Reed v. State, 875 So.2d at 437-38; Owen v. State, 862 So.2d 687, 704 (Fla.2003); Johnson v. Moore, 837 So.2d 343, 348 (Fla.2002); Blanco v. State, 706 So.2d 7, 11 (Fla.1997). In Blanco, this Court stated:
Eligibility for this aggravating circumstance is not automatic: The list of enumerated felonies in the provision defining felony murder is larger than the list of enumerated felonies in the provision defining the aggravating circumstance of commission during the course of an enumerated felony. A person can commit felony murder via trafficking, carjacking, aggravated stalking, or unlawful distribution, and yet be ineligible for this particular aggravating circumstance. This scheme thus narrows the class of death-eligible defendants.
706 So.2d at 11 (footnotes omitted). Accordingly, Dufour's claim is meritless.
Dufour next asserts that the CCP jury instruction failed to genuinely narrow the class of persons eligible for the death sentence. However, this Court has held that, absent an objection at trial, this claim is procedurally barred. See Walton v. State, 847 So.2d 438, 445 (Fla.2003); see also Harvey v. Dugger, 656 So.2d 1253, 1258 (Fla.1995) (holding that appellant's claim that the CCP aggravator was unconstitutionally vague was procedurally barred because no objection was made at trial to the instruction); James v. State, 615 So.2d 668, 669 (Fla.1993) ("Claims that the [jury] instruction ... is unconstitutionally vague are procedurally barred unless a specific objection on that ground is made at trial and pursued on appeal."). The record reveals that no objection was made at trial and that this claim was not presented on appeal. Therefore, this claim is procedurally barred.
Dufour claims that the penalty phase jury instructions improperly shifted the burden to Dufour to prove that the mitigating factors outweighed the aggravating factors. This claim could and should have been presented on appeal and is thus procedurally barred. See Harvey, 656 So.2d at 1255-56 (holding that appellant's claim that the penalty phase jury instructions improperly shifted the burden to Harvey to prove that the mitigating factors outweighed the aggravating factors was procedurally barred from postconviction review because it could have been presented on direct appeal).

Constitutionality of Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar
Dufour argues that Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar is unconstitutional. Rule 4-3.5(d)(4) prohibits a lawyer from initiating *70 communication with any juror regarding a trial with which the lawyer is connected, except to determine whether the verdict may be subject to legal challenge. See R. Regulating Fla. Bar. 4-3.5(d)(4). This rule provides that the lawyer "may not interview the jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist." Id. Before conducting such an interview, the lawyer must file a notice of intent to interview, setting forth the name of the juror to be interviewed. See id. The lawyer must also deliver copies of the notice to the trial judge and opposing counsel a reasonable time before the interview. See id.
This Court has previously held that any challenge to the constitutionality of rule 4-3.5(d)(4) should be presented on direct appeal. See, e.g., Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000); see also Allen v. State, 854 So.2d 1255, 1258 n. 4 (Fla.2003). Procedural bar notwithstanding, this Court has previously rejected similar constitutional challenges to this rule. See Power v. State, 886 So.2d 952, 957 (Fla.2004); Johnson v. State, 804 So.2d 1218, 1224 (Fla.2001). As a result, the trial court properly denied this claim.

Cumulative Error
"[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." Griffin v. State, 866 So.2d 1, 22 (Fla.2003); see also Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999). Dufour is not entitled to relief on this claim because the alleged individual errors are without merit and, therefore, the contention of cumulative error is similarly without merit.

HABEAS CORPUS

Ineffective Assistance of Appellate Counsel
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[W]hether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). It is under this legal framework that Dufour's habeas claims will be addressed.
Dufour advances that appellate counsel was ineffective for not presenting on direct appeal the errors that occurred when the State presented improper and prejudicial evidence, specifically: an emotional display by the victim's sister on the witness stand and eliciting testimony regarding Dufour's sexuality during the guilt phase. He also argues that the direct appeal should have challenged the admission of prejudicially gruesome pictures of the Mississippi murder committed by Dufour into evidence.
Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been *71 presented on direct appeal or in a postconviction motion. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). This is generally true with regard to issues that would have been found to be procedurally barred had they been presented on direct appeal. See id.
First, with regard to the emotional display by the victim's sister on the witness stand during Dufour's penalty phase, the claim would have been barred on direct appeal. The record demonstrates that Dufour's trial counsel did not object to the testimony of the victim's sister during the penalty phase and thus did not preserve the issue for review. Given the lack of preservation, Dufour could obtain relief only if he could demonstrate that the error rose to the level of fundamental error. See Power v. State, 886 So.2d 952, 963 (Fla.2004). Dufour does not allege nor could he establish that the victim's sister's testimony constituted fundamental error and, thus, this claim is without merit.
Dufour next attacks appellate counsel's failure to seek review of the admission of testimony regarding Dufour's sexuality during the guilt phase. If a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective. Rutherford, 774 So.2d at 643 (quoting Williamson, 651 So.2d at 86). Had appellate counsel presented this issue on direct appeal, it would have been meritless and, thus, appellate counsel was not ineffective in failing to present this issue.
Specifically, Dufour contends that during the guilt phase, the State improperly elicited from Raymond Ryan testimony that, "Donald liked guys." Dufour's trial counsel objected to this statement and requested a mistrial, which the trial court denied. The State also asked Stacey Sigler, "When you were the defendant's girlfriend, did he, on occasion, pick up men to have sexual relations with them?" Again, Dufour's trial counsel objected to this statement and moved for a mistrial. The trial court sustained the objection, stating that the prejudice resulting from eliciting the information would outweigh its relevance, but denied the motion for a mistrial.
Dufour argues that these questions concerning Dufour's homosexual activities constituted improper character evidence in violation of Williams v. State, 110 So.2d 654 (Fla.1959). This Court has recognized that
[i]t is settled law in this State that evidence of any facts relevant to a material fact in issue, except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. Williams v. State, 110 So.2d 654 (Fla.1959).
Alford v. State, 307 So.2d 433, 436 (Fla.1975).
Florida law demonstrates that, depending on the facts of the case, evidence of a person's homosexuality may be relevant to establish state of mind and motive. In Alford, it was asserted that evidence concerning the defendant's attempt to engage in a homosexual act immediately prior to the commission of the offense charged was irrelevant and constituted an improper assault *72 on the character of the defendant, prejudicing him in the minds of the jury. See Alford, 307 So.2d at 436-37. The State in Alford maintained that the testimony was relevant and admissible because it showed that sexual frustration resulting from the inability to complete a homosexual act at approximately 9:30 a.m. was the motive for a later sexual assault on the victim that occurred between 10 a.m. and 11 a.m. the same day. See id. at 437. The Court in Alford held:
Based on the foregoing, we hold that the circumstances surrounding the earlier unfulfilled sexual act were relevant to establish the state of mind of appellant and the motive for the assault on the victim occurring only a short time thereafter. Such evidence also was relevant to rebut alibi testimony. The trial court did not err in admitting such testimony.
Id. at 438. In addition, in Toole v. State, 479 So.2d 731 (Fla.1985), it was asserted that the prejudicial impact of evidence of homosexuality substantially outweighed any probative value. See id. at 732. In concluding there was no reversible error, the Court stated:
The fact that appellant knew the victim and had argued with him was relevant to prove motive, irrespective of whether the argument was a "lovers' quarrel"; any potential prejudicial impact on the issue of premeditation did not materialize in light of the specific verdict of felony murder.
Id.
The record reveals that during the guilt phase here Stacey Sigler testified with regard to Dufour's stated intent on the night of the murder. Specifically, Sigler related that Dufour had stated that he was going to find a homosexual and rob and kill him. Testimony pertaining to Dufour's homosexuality was thus relevant to demonstrate motive or his state of mind at the time of the murder, and it was not directed to illuminate his character or propensity to engage in criminal conduct. In addition, the record reveals that Dufour's trial counsel also inquired about Dufour's sexual preference. Specifically, the defense asked Dufour's brother Gary to discuss Dufour's sexual preference and Gary testified that Dufour was gay and had been exposed to homosexuality by his other brother George. Thus, Dufour's assertion that his sexuality was not relevant is unpersuasive.
Even if irrelevant, the admitted statements did not prejudice Dufour. First, the record reveals that when the State asked Stacey Sigler, "When you were the defendant's girlfriend, did he, on occasion, pick up men to have sexual relations with them?" the trial court sustained an objection, stating that the prejudice would outweigh the relevance. Sigler never answered the question and simply propounding the question does not demonstrate prejudice to Dufour. Moreover, any impact from the jury hearing Ryan's testimony that, "Donald liked guys," was harmless beyond a reasonable doubt. See id.; see also State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986) ("The question is whether there is a reasonable possibility that the error affected the verdict."). There was overwhelming permissible evidence of Dufour's guilt. Moreover, Dufour's homosexuality was not in any way urged as a basis for a death recommendation and was not made a focal point of the proceedings. Based upon a review of the record, we conclude that the comment that Dufour "liked guys" did not constitute harmful error. Therefore, Dufour's claim that appellate counsel was ineffective in failing to present this issue on direct appeal cannot satisfy the Strickland prejudice prong.
*73 Dufour next contends that appellate counsel should have challenged on appeal the admission of irrelevant and unfairly prejudicial photographs at trial. At the penalty phase hearing, the State attempted to introduce four photographs of the victim of the Mississippi murder Dufour had committed to assist in explaining to the jury the nature and manner in which the wounds were inflicted. The defense objected to introduction of the pictures. The trial court sustained the objection with regard to two of the photographs and allowed the State to present the other two photographs. One photo displayed the condition of the victim from his mid-torso down his entire body, and the second picture showed the victim's right hand, chest and abdominal area, demonstrating the defensive wound on the right hand and numerous other stab wounds in the chest area. At the time the photographs were taken the blood had been cleared from the torso of the victim's body.
In Rhodes v. State, 547 So.2d 1201 (Fla.1989), this Court noted that evidence concerning the circumstances of a prior felony conviction involving the use or threat of violence is admissible during the penalty phase of a capital trial. See id. at 1204-05; see also Duncan v. State, 619 So.2d 279, 282 (Fla.1993). However, this Court cautioned that there are limits on the admissibility of such evidence, emphasizing that "the line must be drawn when [evidence of the circumstances of the prior offense] is not relevant, gives rise to a violation of a defendant's confrontation rights, or the prejudicial value outweighs the probative value." Rhodes, 547 So.2d at 1205. The relevant question is whether the trial judge abused his discretion in admitting the photographs. See Nixon v. State, 572 So.2d 1336, 1343 (Fla.1990). This Court has previously held: "The test for admissibility of photographic evidence is relevancy rather than necessity." Rivera v. State, 859 So.2d 495, 510 (Fla.2003) (quoting Pope v. State, 679 So.2d 710, 713 (Fla.1996)); see also Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990) ("Photographs must only be excluded when they demonstrate something so shocking that the risk of prejudice outweighs its relevancy.").
In Duncan, this Court agreed that the prejudicial effect of a gruesome photograph clearly outweighed its probative value. See Duncan, 619 So.2d at 283. In doing so, this Court stated:
The photograph did not directly relate to the murder of Deborah Bauer but rather depicted the extensive injuries suffered by the victim of a totally unrelated crime. Moreover, the photograph was in no way necessary to support the aggravating factor of conviction of a prior violent felony. A certified copy of the judgment and sentence for second-degree murder indicating that Duncan pled guilty to and was convicted of a violent felony had been introduced. As explained above, there was also extensive testimony from Captain Stephens explaining the circumstances of the prior murder and the nature of the injuries inflicted.
Duncan, 619 So.2d at 282. However, the Duncan Court found the error in admitting the photographs harmless beyond a reasonable doubt. See id.; see also DiGuilio, 491 So.2d at 1129. In concluding the error was harmless, the Court stated that once admitted, no further reference was made to the photograph, the photograph was not urged as a basis for a death recommendation, the photograph was not otherwise made a focal point of the proceedings, and the jury was well aware of the fact that Duncan had previously been convicted of the brutal attack and murder of another person. See Duncan, 619 So.2d at 282.
*74 In the present case, the photographs were introduced during the penalty phase to assist Mayfield in describing what the pathologist determined to be the nature and cause of the victim's death in the Mississippi murder. See Bush v. State, 461 So.2d 936, 939 (Fla.1984) ("Photographs are admissible where they assist the medical examiner in explaining to the jury the nature and manner in which the wounds were inflicted."). These photographs were relevant because they related to Dufour's prior felony conviction, and evidence concerning the circumstances of a prior felony conviction is admissible during the penalty phase. See Rhodes, 547 So.2d at 1204. Even if not relevant, admission of the photographs at issue would not have provided a basis for reversible error on appeal because the admission was harmless and the photos do not create the circumstance that the risk of prejudice outweighed the relevancy. See Provenzano, 561 So.2d at 549 ("Photographs must only be excluded when they demonstrate something so shocking that the risk of prejudice outweighs its relevancy."); see also Rivera, 859 So.2d at 510-11. Accordingly, this claim is denied.
Dufour asserts that appellate counsel was ineffective for failing to challenge on appeal improper comments made by the prosecutor during the penalty phase closing arguments. Specifically, Dufour now challenges the State's comment to the jury that they had to "weigh the significance of a human life in our society versus a pretty piece of jewelry," as well as the State's argument that the jury must act as the conscience of the community. This Court, however, has held that "appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object." Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1997); see Power v. State, 886 So.2d 952, 963 (Fla.2004). A timely objection allows the trial court an opportunity to give a curative instruction or admonish counsel for making an improper argument. See Power, 886 So.2d at 963. Dufour has failed to demonstrate that these alleged errors were preserved by objections in the record, and therefore appellate counsel cannot be deemed ineffective for failing to present this claim.
When the alleged errors are not preserved, Dufour may obtain relief only if he can demonstrate that the State's comments constitute fundamental error. Fundamental error is the type of error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. See Card v. State, 803 So.2d 613, 622 (Fla.2001). In determining whether fundamental error has occurred, the totality of the circumstances approach applies. See id. at 622. Having reviewed the closing argument in its entirety, we conclude that the State's remarks do not constitute fundamental error so as to have deprived Dufour of a fair trial.
Dufour next asserts appellate counsel was ineffective for failing to challenge the fact that the indictment failed to charge felony murder as well as first-degree murder. Dufour concedes that this claim has no merit and only presents it to preserve the claim. Appellate counsel cannot be ineffective for failing to present this meritless issue. See Freeman, 761 So.2d at 1071 (rejecting appellant's argument that appellate counsel was ineffective for failing to argue that the trial court erred in denying the pretrial motion to dismiss the indictment because it did not specifically charge felony murder and only charged him with premeditated murder). Thus, no relief is warranted. Finally, Dufour concedes that his claim relating to the commission *75 during a felony aggravating factor instruction has no merit and only presents it to preserve the claim. This Court has repeatedly rejected similar claims, and thus no relief is warranted. See id.

CCP Jury Instruction
This Court has previously held that "[c]laims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal." Pietri v. State, 885 So.2d 245, 276 (Fla.2004) (quoting Jackson v. State, 648 So.2d 85, 90 (Fla.1994)). This claim is procedurally barred because Dufour did not challenge this instruction at trial. See id. In the absence of fundamental error, an appellate attorney has no obligation to present an issue that was not preserved for review. See Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000). Dufour does not assert that the CCP instruction constituted fundamental error, and thus, this claim is denied.

Validity of Dufour's Death Sentence
In his petition for a writ of habeas corpus, Dufour challenges the validity of his death sentence by arguing that Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court has rejected similar claims in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002); and similar cases, see, e.g., Dillbeck v. State, 882 So.2d 969, 976 (Fla.2004). Furthermore, one of the aggravating circumstances found by the trial court in this case was Dufour's prior conviction of a violent felony, "a factor which under Apprendi and Ring need not be found by the jury." Jones v. State, 855 So.2d 611, 619 (Fla.2003); see also Doorbal, 837 So.2d at 963 (rejecting Ring claim where one of the aggravating circumstances found by the trial judge was defendant's prior conviction for a violent felony), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Accordingly, we reject Dufour's claim.

Cumulative Error
As noted by the State, Dufour has not articulated his cumulative error claim in a manner upon which this Court can afford relief. Dufour simply refers to the "sheer number and types of errors involved" in his trial. As this Court has previously stated, "[t]he purpose of an appellate brief is to present arguments in support of the points on appeal." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990). Furthermore, neither the individual claims presented in Dufour's habeas petition nor those advanced in his motion for postconviction relief constitute a basis for relief. Therefore, cumulatively, these claims fail as well. See Porter v. Crosby, 840 So.2d 981 (Fla.2003) (concluding that habeas corpus petitioner's cumulative error claim was properly denied where individual allegations of error were found to be without merit). Accordingly, Dufour is not entitled to relief.

CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of Dufour's rule 3.850 motion and deny Dufour's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., specially concurs with an opinion.
*76 ANSTEAD, J., specially concurring.
Although I recognize that a majority of this Court has rejected similar claims, I cannot agree with the majority's analysis and rejection of the claims made here under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] Dufour contends that (1) counsel rendered unconstitutionally ineffective assistance of counsel in failing to investigate and present a voluntary intoxication defense and in failing to strike jurors during the guilt phase; (2) penalty phase counsel rendered unconstitutionally ineffective assistance of counsel; (3) Dufour received an inadequate mental health evaluation; (4) Dufour was prejudiced by the cumulative impact of improper evidence; (5) trial counsel was ineffective in failing to object when Dufour's sentencing jury was misled by comments, questions and instructions that inaccurately diluted the jury's sense of responsibility for their role in the sentencing process; (6) the State committed fundamental error by destroying exculpatory physical evidence; (7) Florida's death penalty statute is unconstitutional; (8) section 921.141(5) of the Florida Statutes is facially vague and overbroad; (9) Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar prohibiting Dufour's lawyers from interviewing jurors is unconstitutional; and (10) the combination of procedural and substantive errors cumulatively deprived Dufour of a fair trial.
[2] Dufour asserts that (1) appellate counsel rendered ineffective assistance on direct appeal; (2) the cold, calculated, and premeditated jury instruction is unconstitutionally vague and overbroad; (3) Dufour's death sentence is unconstitutional because he did not have a jury verdict on each element of the capital offense; and (4) the combination of procedural and substantive errors cumulatively deprived Dufour of a fair trial.
[3] While Dufour presented evidence at the evidentiary hearing concerning his extensive drug and alcohol use, Dufour did not present any competent evidence demonstrating that he was actually intoxicated at the time of the offense. Dr. Berland, based on his evaluation, was not able to conclude whether Dufour was under the effects of drugs or alcohol at the time of the murder. Moreover, Dufour did not present competent evidence proving his inability to form the specific intent to commit the crime. Dr. Lipman testified that Dufour had a clear rendition of the events the day of the murder. In addition, Dr. Merin testified at the evidentiary hearing that Dufour's actual intoxication influence did not eliminate his ability to plan the murder.
[4] The postconviction evidentiary hearing record indicates that Dufour committed a double homicide, the "Stinson and Wise murders," in Florida before the murder in this case. However, the instant case proceeded to trial first and Dufour ultimately pled guilty to the Stinson and Wise murders after the penalty phase in the instant case. Testimony at the evidentiary hearing revealed that Dvorak was aware of both the double homicide that Dufour committed in Florida, as well as the additional Mississippi murder of Earl Wayne Peeples.
[5] On direct appeal, this Court specifically rejected Dufour's argument that the trial court's forcing him to wear leg shackles during the trial led to undue jury prejudice. See Dufour, 495 So.2d at 162.
[6] On direct appeal, this Court rejected Dufour's argument that the jury was tainted by knowledge that a juror was excused because her husband had received a strange phone call. Specifically, the Court stated that in "light of the tenuous connection between the trial and the call, the court's instruction to the jury was sufficient to cure any taint which may have resulted from the jurors' knowledge of the call." Dufour, 495 So.2d at 163.
[7] Dufour's claim that he should have been allowed to interview jurors is both procedurally barred and legally insufficient. This Court has previously held that claims regarding the inability to interview jurors should be presented on direct appeal. See Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (determining that claims regarding the inability to interview jurors should have been presented on direct appeal).
[8] This claim is procedurally barred and meritless. See infra pp. 70-71.
[9] This claim is procedurally barred and meritless. See infra pp. 71-73.